NICHOLAS J. THERMOS, Individually and d/b/a Hinsdale Camera Center, Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Second District (2nd Division)   No. 74-289

Opinion filed April 15, 1976.

William J. Scott, Attorney General, of Chicago (Robert G. Epsteen, Assistant Attorney General, of counsel), for appellant.

Richard J. Short, of Chicago, for appellee.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

As the result of a test audit, plaintiff, Nicholas Thermos, was assessed a use tax for a period beginning in July of 1968 and ending in March of 1971. This assessment, which amounted to $4669.48 plus interest and penalties, was based on plaintiff's alleged use of certain camera equipment in his business, a camera store. Plaintiff protested the imposition of the tax, was granted a hearing, at the close of which, the hearing officer found for the defendant by upholding plaintiff's assessed tax liability. Plaintiff then sought relief in the circuit court pursuant to the Administrative Review Act and upon a review of the record the circuit court found for plaintiff, reversing the hearing officer's determination that

plaintiff was liable for the assessed amount. The Department appeals from that decision.

■■ We initially note that the role of this court is to review the record of the administrative agency to determine if the finding of plaintiff's use tax liability is against the manifest weight of the evidence. *Kerr v. Police Board*, 59 Ill. 2d 140, 141-42 (1974); *Marion Power Shovel Co. v. Department of Revenue*, 42 Ill. 2d 13, 17 (1969).

Defendant's auditor, who conducted a test audit of plaintiff's camera business for the time period in question, testified that he based his assessment of plaintiff's use tax liability upon the rental income derived from plaintiff having rented certain camera equipment to customers, and upon plaintiff's construction and maintenance of a color television studio within his business.

Referring to the studio in his testimony, the auditor stated that the taxpayer's records showed that he had transferred certain equipment, valued at $24,924.04, from his sales inventory, and capitalized it, claiming Federal income tax depreciation on the equipment for approximately one year and six months. The auditor said that plaintiff used this equipment as a closed circuit color television studio. The fact that this equipment was capitalized and subsequently depreciated caused the auditor to determine that plaintiff owed use tax for the equipment used in the studio. The auditor went on to explain that after 18 months this equipment was transferred back into plaintiff's sale inventory at the original price, and the depreciation which had been previously claimed, was transferred to other items. During the course of the audit, the auditor did not inquire of the taxpayer as to whether the studio was used for demonstration purposes or whether any of the equipment in the studio was sold to customers.

Plaintiff's witness, his wife, Marion Thermos, who functioned as the bookkeeper and manager of the video recording section of the business, admitted that certain camera equipment had been transferred from the sales inventory and that this equipment had been used for a color television demonstration studio. She characterized this ledger transfer and the subsequent depreciation claims as accounting errors. She testified that the studio was constructed because the Sony corporation agreed to grant plaintiff's application for a color camera franchise provided he construct a studio in which to demonstrate the equipment; that under the agreement, plaintiff constructed the studio which, when completed, consisted of cameras, recorders, monitors, switchers and microphones, all purchased from suppliers; and that the Retailers' Occupation Tax was paid on all of these acquisitions. In addition, she testified, the studio contained display racks on which various types of camera equipment were displayed and some of the equipment so displayed was, from time to time, sold to customers. In explaining this statement, she estimated that

during the three and a half year period which the audit covered, approximately $50,000 to $100,000 worth of equipment in the studio had been sold. Mrs. Thermos testified that a portion of the taxpayer's business consisted of designing and constructing color studio facilities, that the taxpayer had installed such a studio for Marshall Field's Department Store in Chicago, and the taxpayer's employees had drafted plans for other such studios for various private companies. She estimated that the construction of a studio would cost between $160,000 and $300,000.

Focusing on the rental receipts, the second item upon which use tax liability was assessed, the auditor testified that the taxpayer engaged in the rental of camera equipment not for the purpose of promoting sales, but, rather, for the purpose of gaining income from these rental transactions. The auditor stated that his conclusion was based on the facts that the taxpayer derived income each month from rentals and advertised in the classified section of the phone book as a camera rental business, and because in a conversation between himself and taxpayer, the taxpayer stated that he leased the equipment to customers but not for the purpose of promoting sales. This testimony, concerning the taxpayer's purpose, was corroborated by the formula under which the audit of rental receipts was conducted. The auditor said that in determining the amount on which to assess the use tax, he allowed a 2% deduction from the total rental receipts. He stated that he arrived at this 2% deduction formula when, after consultation with the taxpayer, the taxpayer fully agreed that only 2% of his rental receipts were the result of promotional rental transactions. In addition, certain pages of the classified section of the phone book were introduced into evidence. These pages, on which plaintiff's advertisements were contained, showed that plaintiff advertised that "rentals are our specialty."

The taxpayer himself contradicted this evidence. He said that his rental income amounted to approximately one and one-half percent of his total sales volume, although it was stipulated that the correct percentage was 1.74%. He admitted to conducting rental business but he insisted that these transactions were solely for the purpose of stimulating and promoting sales. As support for his position, he pointed to the fact that he maintains no sign in or around his store which advertises his business as including rentals and that he does not charge much for his rentals, desiring only to cover his expenses of rental. Based upon this evidence the hearing officer determined that the taxpayer was liable for the use tax on his use of both the color television studio and the receipts from his rental business.

A tax is imposed upon the privilege of using tangible personal property within this State. (Ill. Rev. Stat. 1973, ch. 120, §439.3.) The word "use" is defined in the Use Tax Act as the exercise of ownership power over

tangible personal property but excepts the use of the property for demonstration purposes. (Ill. Rev. Stat. 1973, ch. 120, §439.2.) Plaintiff here relies upon this demonstration exemption contending that both the rental business and the television studio were used for the purpose of promoting sales and their use thus falls within this exemption.

The demonstration exemption is further explained by Use Tax Rule No. 3(2) which states that the leasing of tangible personal property by a retailer of that property is within the demonstration exemption if the property is not held primarily for rental but for sale and if the business of renting is to stimulate sales by allowing prospective buyers to determine if they would like to purchase the property. It is further elaborated by Use Tax Rule No. 2(1)(a) which states that "use" does not include the demonstration of any property which is sold in the regular course of business.

Mindful that the tax exemption is strictly construed in favor of taxation and that one seeking the protection of the exemption has the burden of clearly proving that he is entitled to it (*Heller v. Fergus Ford, Inc.*, 59 Ill. 2d 576, 579 (1975); *Skil Corp. v. Korzen*, 32 Ill. 2d 249, 251 (1965)), we turn to the facts of this case to determine if the two uses in question were instituted for the purpose of demonstration or, as the administrative hearing officer determined, for plaintiff's own purpose.

■■ Examining first the liability based on plaintiff's use of the studio, we find that the hearing officer's determination of liability is against the manifest weight of the evidence. It was established that the studio consisted of cameras, microphones, switchers, monitors, recorders and display racks with camera equipment on them. The manager of this section of the taxpayer's business testified that some of the equipment from the studio was sold and that the studio was set up to demonstrate the equipment for sale. She said that the studio was necessary in order for the taxpayer to obtain a Sony franchise. She said, with corroboration from various exhibits of plans and proposals taxpayer introduced at the administrative hearing, that the taxpayer had designed and constructed similar studios for private industries and that the studio in question demonstrated this design. There was no testimony that the taxpayer had ever produced a video recording by using the equipment in the studio.

■■ In our view, this evidence firmly establishes that the studio equipment was used for demonstration purposes. The auditor stated that he based his assessment of a use tax on the fact that the taxpayer had taken the studio equipment out of his sales inventory, capitalized it and then depreciated it for one and one-half years. The defendant Department relies on that fact to support the assessment, arguing that the taxpayer cannot withdraw equipment from its sales inventory and

depreciate it for tax purposes and at the same time claim a demonstration exemption for the same equipment under section 439.2 and Use Tax Rule No. 2. (Ill. Rev. Stat. 1973, ch. 120, §439.2.) While we feel that the Federal tax consequences of plaintiff's accounting methods are beyond the scope of this court's inquiry, taxpayer did explain that this was an accounting error and that the error was remedied by transferring depreciation previously claimed to other items. As to the color television studio, we conclude that the hearing officer's determination of tax liability was against the manifest weight of the evidence.

■■ We do not, however, agree with plaintiff's position regarding the rental receipts, for we find that the evidence does support the hearing officer's determination of liability as to this use. The determinative issue is whether plaintiff, through his rentals, intended primarily to promote sales or whether he intended primarily to derive income. (Use Tax Rule No. 3(2).) The auditor's testimony that plaintiff told him his purpose in renting was to derive income and not to stimulate sales, the exhibits representing taxpayer's business of renting as its specialty, and the stipulated 2% deduction for demonstration income used in arriving at plaintiff's use tax liability, all weigh heavily against plaintiff's position that his intent was sales promotion, not production of income. These facts support the hearing officer's determination of use tax liability in this case.

We remand the cause to the Department of Revenue for a finding of plaintiff's use tax liability that is consistent with the views expressed herein.

Affirmed in part, reversed in part and remanded with directions.

RECHENMACHER, P. J., and DIXON J., concur.