HUMPHREY CADILLAC AND OLDS, INC., Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Second District   No. 78-222

Opinion filed January 26, 1979.

William J. Scott, Attorney General, of Chicago (Gail A. Moreland, Assistant Attorney General, of counsel), for appellant.

Robert K. Clark, of Rockford, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The Department of Revenue (hereafter "the Department") served Humphrey Cadillac and Olds, Inc. (hereafter "the Taxpayer") with a notice of tax liability for use tax alleged to be owing upon automobiles held by the Taxpayer in what is termed a "rental" account. The assessment, including the penalty and interest, was in the amount of $11,869.30, and covered the period from July of 1972 through May of 1975. After an evidentiary hearing before one of the Department's hearing officers, the assessment was confirmed and the Taxpayer filed a complaint under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), before the circuit court of Winnebago County. After further proceedings, the court entered a judgment reversing the finding of the Department's hearing officer. The Department appeals.

At the outset we note that the finding of the Department's hearing officer may not be reversed unless it is against the manifest weight of the evidence. (See, *e.g., Thermos v. Department of Revenue* (1976), 37 Ill. App. 3d 410, 412.) However, the underlying facts in this case were not in

any substantial way in dispute, although the opposing witnesses drew different conclusions from those facts.

The primary business of the Taxpayer is the retail sale of new and used automobiles and parts, and the firm has enjoyed retail sales of $8 to $10 million dollars per year. Apart from inventory accounts for new cars, used cars, and leased cars, the Taxpayer held certain automobiles under what it termed a "rental account." During the audit period, 60 to 61 cars were held in this account, with 10 to 12 cars listed in the account at any given time, for periods ranging to some months to slightly longer than a year. The assessment of use tax by the Department in this case was based upon the cost of all of the vehicles which were at any time held in the rental account.

There were a number of factors which led the Department to make an assessment for use tax, apart from the fact that the account was labeled a "rental" account. The Taxpayer maintains a number of "demo" cars (*i.e.*, used for demonstration purposes) and these are not held under the "rental" account. The "demos" all carry dealer's license plates while the cars held in the "rental" account are licensed individually. The Taxpayer maintains a separate "rental" office within the dealership which has a sign bearing the title "Rockford Auto Rental," a name "made up" in order to give the general public the appearance that the rental office was a separate firm. Every car in the rental inventory was rented at least once, and the rental operation generated gross income of $68,229 during the audit period, although after expenses this worked out to a net loss of $8,479. Finally, an auditor for the Department testified that the Taxpayer books indicated "what appeared to be depreciation" in the form of an item entered into the account, against the value of the cars, termed a "depreciation reserve."

At the hearing before the Department's hearing officer, the Taxpayer's sales manager presented testimony which related the "rental" account to the Taxpayer's overall business. He testified that the term "depreciation reserve" was not correct since the charge against the value of the cars in the rental account was an "inventory adjustment," intended to adjust the original value of the cars to their current market value. He stated that similar records were kept for the new and used car inventories. The "rental department" was operated as a convenience to the Taxpayer's customers and with the idea that the persons using the cars, and others, would become interested in purchasing them. Other than the sign within the Taxpayer's premises, the Taxpayer did nothing to promote or advertise its rental operation, and the "rental" cars were frequently loaned to customers without charge. Every car in the rental account had been purchased directly from the manufacturer and each car was ultimately sold to a retail customer and Retailers' Occupation Tax paid. The "rental"

cars were often used for demonstration purposes by the Taxpayer's salesmen, and on occasion one of these cars would be purchased by a person to whom it had been loaned or rented. The Taxpayer regarded the "rental" account as an "account for resale," and every car held in the account was available for sale at all times.

■ In our view the trial court was correct in reversing the finding of the hearing officer and assessment of the Department. The use tax is a tax imposed on the privilege of using tangible personal property in this State, purchased at retail from a retailer (Ill. Rev. Stat. 1977, ch. 120, par. 439.3). In this case, the evidence was uncontroverted that the automobile in question was obtained from the General Motors Corporation and that General Motors does not engage in the retail sale .of automobiles but is "strictly a wholesaler." It is also obvious from the record as a whole that the cars held in the "rental" account were purchased for the purpose of resale, and that the transitional use of the cars for rental, courtesy and demonstration was merely incidental. The most important fact compelling this conclusion is that the cars held under the "rental account" were treated as inventory available for sale at all times. From the large number of cars which passed through the "rental" account during the audit period, it is clear that this treatment was no idle boast and that the Taxpayer achieved the frequent sale and a rapid turnover of the "rental" cars. Similarly, the sale of certain of the "rental" cars to the person renting or using them supported the Taxpayer's assertion that the interim or transitional use of the cars in the "rental" account was primarily intended to demonstrate the cars and promote sales. In the context of the Taxpayer's massive sales operation, the gross receipts generated by the rental cars were inconsequential, and the fact that the rental car department was operated at a loss, while all the other divisions of the Taxpayer's business were expected to make a profit, provided ample support for the Taxpayer's contention that it had not purchased the cars for rental purposes. Certainly, the rental of the cars to customers would not, standing by itself, render them subject to the use tax. (See *Illinois Road Equipment Co. v. Department of Revenue* (1965), 32 Ill. 2d 576.) Nor does the Taxpayer's deduction of a charge labeled "depreciation reserve" from the cars and the account compel a different result, since the term was described as a misdescription, and the adjustment was similar to those made in the firm's new and used car inventories. (See *Thermos v. Department of Revenue* (1976), 37 Ill. App. 3d 410, 415.) In sum, since the automobiles coming, from time to time, under the "rental" account were purchased from a wholesaler (the manufacturer) for purposes of resale, they did not constitute "tangible personal property" "purchased at retail from a retailer," and were not subject to the use tax. See *Du Page Aviation Corp. v. Department of Revenue* (1976), 37 Ill. App. 3d 587.

30

For the foregoing reasons, the judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.