ILLINI MOTOR COMPANY *et al.*, Appellants, v. THE DEPARTMENT OF REVENUE *et al.*, Appellees.

Fourth District   No. 4—84—0819

Opinion filed November 13, 1985.—Rehearing denied January 28, 1986.

412

Wayne R. Golomb, of Springfield, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Eugene P. Schmittgens, Jr., and Kathryn A. Spalding, Assistant Attorneys General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On December 21, 1982, defendant, Illinois Department of Revenue (Department), issued a final revised assessment finding plaintiff, Illini Motor Company (Motor), to owe the Department the sum of $229,043.33 for unpaid taxes due under the Use Tax Act (UTA) (Ill. Rev. Stat. 1977, ch. 120, par. 439.1 *et seq.*), the Retailers Occupation Tax Act (ROTA) (Ill. Rev. Stat. 1977, ch. 120, par. 440 *et seq.*), and the Municipal Retailers Occupation Tax Act (MROTA) (Ill. Rev. Stat. 1977, ch. 24, par. 8—11—1), together with interest and penalties thereon as of the date of that assessment. The assessment covered a period from January 1, 1975, until December 31, 1979, but no taxes were found to be due prior to those for August 1977. The Department also denied claims of Motor and plaintiff, Illini Leasing & Used Cars, a corporation (Leasing), for refunds for taxes previously paid. On January 7, 1983, plaintiffs filed a complaint for administrative review (Ill. Rev. Stat. 1981, ch. 110, par. 3—104) in the circuit court of Sangamon County. That court affirmed the decision of the Department. Plaintiffs have appealed. We also affirm.

Explanation of certain undisputed facts is necessary to an understanding of the contentions of the parties. At all times pertinent, Michael Kreider was the president and sole shareholder of Motor. In August of 1977, the name of another corporation to which Kreider had the same relationship was changed to become Leasing. Thereafter, Motor sold, in bulk, used vehicles to Leasing, who then purchased new vehicles from Motor, using as trade-ins some of the vehicles obtained in bulk. The new vehicles were leased to customers. Leasing sold some used cars and others were traded in to Motor as new cars were needed for leasing.

At the time plaintiffs adopted this method of operation, the Department had been treating the practice by Motor, and other dealers similarly situated, of obtaining vehicles from their manufacturer and then renting them before selling them at rental as a use of the vehi-

cle. Thus, the Department treated the transaction as being subject to the UTA rather than treating the conveyance of the vehicles to the dealer as a sale for resale which was exempt from taxable incidence (Ill. Rev. Stat. 1977, ch. 120, par. 440). If Motor sold these new vehicles to Leasing without first leasing them, no use tax was incurred. However, the subsequent sale to Leasing was subject to tax under ROTA under the Department's rulings. Motor and Leasing purported to minimize or eliminate the incidence of this tax by having Leasing trade in used cars owned by Leasing and having a value equal to or nearly equal to the value of the vehicle purchased. Ill. Rev. Stat. 1977, ch. 120, par. 440.

The major dispute between the parties concerns the propriety of the practice whereby Leasing traded in vehicles upon its purchases from Motor. The Department determined the practice to be a "sham" and assessed tax under ROTA for each of the transactions in an amount that would have been due had no trade-in been made. Motor contends that this determination was erroneous, and that, in any event, the transfer of vehicles to Leasing was not a taxable transaction. Motor also maintains that the Department improperly rejected its contention that certain sales ruled taxable by the Department were either sales for resale or sales of items to be used for charitable purposes. Plaintiffs also assert that the Department erred in denying their claims for reimbursement for taxes previously paid in error.

Motor's contention that the transfer of vehicles to Leasing was not a taxable event is based upon its theory that the operation of Motor and Leasing was a single entity because their affairs were commingled and Kreider was the sole owner and chief executive officer of both. Motor argues that the operation was a partnership of corporations. Plaintiffs have great incentive to now take this position because of the decision of the Appellate Court for the Second District in *Humphrey Cadillac & Olds v. Department of Revenue* (1979), 68 Ill. App. 3d 27, 385 N.E.2d 846. That court held that there, where a leasing operation was only a small part of the operation of a car sales dealership, the interim use by the dealer of new cars temporarily for leasing to customers prior to sale at retail did not prevent the purchase of those vehicles from the manufacturer from being a sale for resale thus subjecting the retailer to no tax under the UTA. (See *L & L Sales & Services, Inc. v. Department of Revenue* (1979), 68 Ill. App. 3d 329, 385 N.E.2d 925.) Thus, to the extent that the use of separate corporations for selling and leasing had been adopted here to avoid taxation, the device was useless and actually counterproductive.

■ For whatever reason, Kreider made the decision to operate

through two corporations. While the affairs were commingled, neither corporation was dissolved. Business was done in the name of one or the other. No evidence was introduced of minutes of the meetings of the boards of either corporation whereby any agreement to form a partnership was made. No articles of partnership were introduced, and no evidence was introduced that any partnership tax return was ever executed. No case has been called to our attention where two entities which have incorporated have been permitted to themselves deny that they are subject to the obligations resulting from being separate entities merely because of common ownership and an intermingling of their affairs. Rather, the existence of the separate nature of the entities can be denied only when treating them as entities would "sanction a fraud or promote injustice." (*Main Bank v. Baker* (1981), 86 Ill. 2d 188, 205, 427 N.E.2d 94, 101.) Clearly, plaintiffs did not impose a fraud upon themselves by deciding to operate as separate corporations nor did they impose an injustice upon themselves.

Accordingly, we return to the dispute as to whether Leasing's purported trade-ins to Motor constituted a sham. The Department deemed the records presented to be inadequate to show that the trade-ins were actually made. Motor's books gave no indication of any trade-ins from Leasing being made after April of 1978. The records prior to that date were uncertain. On at least two occasions, the records of plaintiffs indicated that the same vehicle had been both traded in by Leasing to Motor and sold at retail by Leasing to a customer at about the same time. At other times an inconsistency was shown between the report of Motor as to a sale to Leasing and the manner in which Motor treated that sale on its books.

■■■ In making his recommendations, the auditor had considered hearsay evidence from employees of the Secretary of State which indicated that no new certificates of title had been obtained for the various transactions whereby Motor sold to Leasing. Although when a dealer holds an automobile for resale, he need not obtain a new certificate of title upon acquisition of the vehicle (Ill. Rev. Stat. 1977, ch. 95½, par. 3—102), a dealer is required to obtain a new certificate for a purchaser when a sale is made at retail (Ill. Rev. Stat. 1977, ch. 95½, pars. 5—101(i), 5—102(i)). The transactions whereby new vehicles were sold individually by Motor to Leasing were sales at retail requiring the new certificate. Thus, the information would have been pertinent to the question of whether transactions between Motor and Leasing were *bona fide*. The Department recognized the hearsay problem and did not give substantial consideration to this aspect of the evidence. Reliance on hearsay is not totally impermissible in hear-

ings before the Department. Although reliance upon hearsay may give rise to a due process violation (*Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 367 N.E.2d 1238), results of audits based partly upon hearsay have been deemed worthy of consideration when the taxpayer has no books or records (*Puleo v. Department of Revenue* (1983), 117 Ill. App. 3d 260, 453 N.E.2d 48), or where, as here, the taxpayer's records are inadequate (*Vitale v. Department of Revenue* (1983), 118 Ill. App. 3d 210, 454 N.E.2d 799).

■■ Motor's brief does not indicate the amounts of assessment which are based on taxes under ROTA and MROTA in regard to sales from which Motor claims to have been exempt because they were for resale at retail or because the sales were for exempt charitable purposes. Motor admits that the amount involved was small. The Department's denial of exemption was proper. As far as the sales purported to be for resale are concerned, Motor failed to produce the certificate required to show exemption. (Ill. Rev. Stat. 1977, ch. 120, par. 441(c); see *Tri-America Oil Co. v. Department of Revenue* (1984), 102 Ill. 2d 234, 464 N.E.2d 1076.) Similarly, the Department could have properly concluded that documentation of the sales for which the charitable exemption was claimed was insufficient.

■■ Motor and Leasing filed a total of eight claims for refund for various ROTA and MROTA taxes which plaintiffs contended to have paid by mistake. The Department recited various reasons for denying the claims. One reason was the failure of the allegation of the claims to be more specific. We agree. Although the plaintiffs' bookkeeper testified that the amounts of the claims could be determined by adding all of the taxes shown on the auditor's papers as having been paid in the period in question, we are unable to determine from the record what each item of taxation was for and why it is supposed to have been paid in error. We understand that some of the taxes paid under UTA, prior to *Humphrey*, were likely paid in error, but our understanding of the claims is that they were for ROTA and MROTA taxes paid. We are not persuaded that any of those taxes were paid in error.

The circuit court properly affirmed the Department. We affirm that court.

Affirmed.

WEBBER and MORTHLAND, JJ., concur.