137 So.2d 740

STATE of Alabama

v.

KERSHAW MANUFACTURING COMPANY.

3 Div. 939.

Supreme Court of Alabama.

Feb. 1, 1962.

MacDonald Gallion, Atty. · Gen., Guy Sparks, Sp. Asst. Atty. Gen., and · Jas. R. Payne, Asst. Atty. Gen., for appellant.

**216**

Ball & Ball, Fred S. Ball, Jr., and John R. Matthews, Jr., Montgomery, for appellee.

SIMPSON, Justice.

This is an appeal by the State from a final decree of the Circuit Court of Montgomery County, in Equity, vacating and setting aside a deficiency sales tax assessment made by the State Department of Revenue against The Kershaw Manufacturing Company, a corporation, the appellee here.

During the period of time covered by the assessment, June 1, 1953 through May 31, 1956, Kershaw was in the business of manufacturing various types of railroad maintenance equipment. Seventy-five percent of the equipment manufactured during this period was initially sold to some railroad. Twenty-five percent of the taxpayer's production was initially leased and later either sold to customers or junked.

The single issue involved on this appeal is whether a tax is due on the parts which went into production of the 65 pieces of machinery leased by the taxpayer. The State contends that tax is due on the theory that the leasing of the equipment involved was a "withdrawal, use or consumption" of tangible personal property bought at wholesale within the meaning of Subsection (j), § 752, Title 51, Code of 1940, as amended. Taxpayer, appellee, on the other hand contends that as the machines were "manufactured or compounded for sale" within the meaning of such section, the value of such parts was not subject to the sales tax.

■ It is clear that Subdivision (j), § 752, was enacted to reach transactions which could not be taxed because there was a withdrawal and use or consumption by the purchaser at wholesale but no sale by him to another.—Hamm v. Windham, 254 Ala. 356, 48 So.2d 310; Merriwether v. State, 252 Ala. 590, 42 So.2d 465, 11 A.L.R.2d 918; State Tax Commission v. Burns, 236 Ala. 307, 182 So. 1, all cited in State v. Helburn Co., 269 Ala. 164, 111 So.2d 912.

There is no dispute as to the facts. The sixty-five machines involved in the audit, the subject of this litigation, were initially leased by Kershaw to railroads. Forty-four of these sixty-five machines were initially leased under agreements containing written purchase options. Thirty-five of these forty-four lessees exercised the purchase option. Of the remaining nine transactions, six machines were returned to Kershaw, which later sold to railroads other than the original lessee or optionee. Twenty-one machines were leased under agreements containing no written purchase option. Of these, nine were sold finally to the original lessee under an oral purchase option, nine were returned to Kershaw and later sold to another than the original lessee, and three were returned to taxpayer and not later sold. In summary then, forty-four machines were sold to the original lessee under either written or oral purchase options; 12 were leased, later returned, and finally sold to others; 6 machines were returned and scrapped, and 3 were returned to Kershaw and further used.

■ The appellee argues that the lease agreements which contained options to purchase are conditional sales within the meaning of the sales tax statute. One of the distinguishing features between a conditional sale and a lease is whether or not the lessee is obligated in all events to pay the total purchase price of the subject of the contract. If return of the property is required or permitted the instrument is a lease; but if on the other hand the so-called lessee is absolutely obligated to pay the purchase price, even though such a price is designated as rental or hire, the contract is one of sale. Where the written evidence of the transaction gave the one described as lessee the option of buying the property, in which event the lessee as purchaser was to receive a credit of 75% for all the monthly rentals that he had paid against the purchase price, it was held in Oberan v. Western Machinery Co., 65 Ariz. 103, 174 P.2d 745, not to make the contract one of conditional sale, as there was no obligation on the part of the lessee to pay beyond the rental period. We think that holding is sound and such is precisely the situation involved in the lease agreements we have here.—See cases collated at 175 A.L.R. 1366, et seq.

It appears clear that the agreements involved in this case were leases, which did not place upon the lessee the obligation to pay the full purchase price. Machines would be returned at the expiration of the term, or the lessee could elect to exercise the purchase option. It is clear that title to the property did not pass with the execution of the agreements, but at all times remained in the taxpayer until the purchase option was exercised. Such is a characteristic of a lease.

■ We come then to a determination of whether the leasing of the machines in question is a "withdrawal, use or consumption" by a purchaser at wholesale within the meaning of the pertinent section. We are constrained to hold that it is. The appellee relies on the case of State Tax Comm. v. Burns, 236 Ala. 307, 182 So. 1, and Hamm v. Windham, supra, for the proposition that the determining factor to be considered is the manufacturer's intent to sell at the time of manufacture and not the initial use to which property is put. With this contention we cannot agree. Both of the aforementioned cases dealt with taxpayers who were in the restaurant business. They bought food products at wholesale, which purchases are exempt from the sales tax act. They compounded

**218**

these products for sale to the public. Some of the food, however, was consumed by employees of the taxpayer. This court held that no tax was due on the withdrawal. In these cases, however, the consumption was but an incident to the "manufacturing and compounding" process. The employees consumed a part of the product during the course of the offering to the public for sale. Such is not the case here. The taxpayer has, instead of selling the manufactured product, leased the same for profit. It is true that the taxpayer is in the business of manufacturing these machines for sale. But, more accurately, we think, he is in the business of manufacturing machines for profit. If the profit is a result of sale, he is under an obligation to collect sales tax, assuming the sale is not otherwise exempt from tax. It is the transaction itself which is taxable. If, on the other hand, instead of selling the machines for profit, the appellee leases them, then it is our view that the transaction amounts to a "withdrawal" for the use and benefit of the taxpayer, and as such the transaction is taxable. It is just this kind of transaction, as we see it, which § 752, Title 51, sub. (j) was enacted to reach.—State v. Helburn Co., supra.

To adopt the argument of the appellee to the effect that the only meaning which could attach to the words of the statute "manufactured and compounded for sale" is "manufactured or compounded with the intention of selling" would lead to the conclusion that a manufacturer who had purchased at wholesale could produce the product with the intention of ultimately selling the item, but could lease it for profit for the term of its life, and then ultimately sell it for salvage, and the products under such lease arrangements would not be subject to tax under the withdrawal provision of the statute. Such we believe was not the intention of the Legislature.

Neither can we agree with the conclusion of the trial court that the various lease transactions were "mere devices" for the purpose of effecting sales. Surely it cannot be said that a sale was effected in those instances where the purchase option was not exercised by the lessee. This alone points up the fallacy of such a position.

 The presumption traditionally indulged in favor of the trial court's finding of fact is inapplicable where there is no substantial conflict in the evidence.—State v. Mobile Stove & Pulley Manufacturing Co., 255 Ala. 617, 52 So.2d 693; Alabama Farm Bureau Mut. Ins. Co. v. Mills, 271 Ala. 192, 123 So.2d 138.

The views hereinabove being contrary to those of the learned trial court necessitates a reversal of the decree.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN. and COLEMAN, JJ., concur.