154 So.2d 24

**MONTGOMERY AVIATION CORP.**

v.

**STATE of Alabama.**

**3 Div. 34.**

Supreme Court of Alabama.

April 11, 1963.

Rehearing Denied May 30, 1963.

MacDonald Gallion, Atty. Gen., and Herbert I. Burson, Jr., Asst. Atty. Gen., for appellee.

SIMPSON, Justice.

This appeal is from a decree affirming a deficiency assessment for sales tax on airplanes owned by appellant and claimed by appellee to have been withdrawn from stock and used or consumed within the purview of § 786(2) (f) and (h), Title 51, Code of Ala.1940, as last amended (see Code Recompiled 1958). The assessment covers two periods: June through September, 1959, and January, 1960 through May, 1961. The assessment was made in October, 1961.

Rushton, Stakely & Johnston, Montgomery, for appellant.

A representative (Revenue Examiner) of the Revenue Department made an audit disclosing that the airplanes involved were purchased at wholesale and were withdrawn and put into rental service. It is the theory of the State that if a plane were bought at wholesale and rented one time the dealer would owe the tax, and this even if the plane were sold the next day. The Revenue Examiner so testified.

The pertinent parts, definitions, of § 786 (2) (f) and (h) are as follows:

"(f) * * * Said term 'gross proceeds of sale' shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business, and shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn from the business or stock and used or consumed by any person so withdrawing the same * * *.

"(h) * * * Said terms 'gross receipts' shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business, and shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn from the business or stock and used or consumed by any person so withdrawing the same * * *."

To support its position the State relies primarily upon State v. Kershaw Manufacturing Co., 273 Ala. 215, 137 So.2d 740, and also cites State Tax Commission v. Burns, 236 Ala. 307, 182 So. 1, and Hamm v. Windham, 254 Ala. 356, 48 So.2d 310.

Appellant's contention is that the subdivisions above set out, and under which the Department of Revenue acted, were enacted to reach transactions which could not be taxed because there was a withdrawal and use or consumption by the purchaser at wholesale, but no sale by him to another. State v. Helburn Co., 269 Ala. 164, 111 So. 2d 912; State v. Kershaw Manufacturing Co., supra. While in Helburn and Kershaw we dealt with § 752(1) (j), and in this case the assessment falls under § 786 (2) (f) (h), it is clear that the intent and purpose of each statute were essentially the same. The Act of 1959 (2d Ex.Sess., p. 317) repealed and rewrote § 752. As we pointed out in Helburn, we are not dealing with the use tax, but a sales tax.

From 1945 until the present time appellant has been engaged in what is described as a fixed base operation. (§ 752(j) came into effect in 1947. Appellant had not been charged with the tax prior to the making of the present assessment.) It stores airplanes belonging to others; it services airplanes; it sells and rents airplanes and also gives flight instructions. We are concerned here with only two of these activities, i. e., selling and renting. The evidence shows that the appellant's principal business in this regard was the selling of aircraft. From the time of purchase and delivery of a plane to appellant it was advertised for sale in both local and national papers and publications. One unusual phase of the business practiced by appellant and others in the same line, is that a prospective purchaser is customarily charged for a demonstration of the plane in which he is interested. For one thing, according to the evidence, it is beneficial for the plane to be used rather than left idle. Again, all planes are available for rental, not only to keep in condition but to supply necessary revenue. The investment is large, insurance coverage is high, advertising is expensive. Another unusual factor in the selling of planes according to the evidence is that the sale price is not affected by the fact that they have been used or rented.

Appellant's manager, as a witness, gave the history of certain of the planes involved in this assessment, that is, the date of acquisition, the date of sale and extent of use. Some of the planes had not been sold at the time of the audit. Several were held two or three months, some shorter times, some longer. The use of the planes, while in the hands of appellant, was measured in hours, the total rental use running from eleven to fifteen hours. It is not questioned that the sales tax was paid by appellant upon planes sold and will be paid on planes sold in the future. Nor does it appear that appellant kept planes solely for rental purposes rather than sale; on the contrary that all its planes were bought for and offered for sale.

The case at bar is differentiated in several material respects from Kershaw. There the taxpayer was in the business of manufacturing various types of railroad maintenance equipment. Some were initially sold to some railroad. Some were initially leased and later either sold to customers or junked. We there said:

"It is true that the taxpayer is in the business of manufacturing these machines for sale. But, more accurately, we think, he is in the business of manufacturing machines for profit. If the profit is a result of sale, he is under an obligation to collect sales tax, assuming the sale is not otherwise exempt from tax. It is the transaction itself which is taxable. If, on the other hand, instead of selling the machines for profit, the appellee leases them, then it is our view that the transaction amounts to a 'withdrawal' for the use and benefit of the taxpayer, and as such the transaction is taxable."

Here the planes were not leased, as in the Kershaw case.

It is not contended, nor do we find any evidence to show, that any planes were "consumed" by rental service. In fact, as we have said, appellee's theory is that any "withdrawal" gives rise to the sales tax, and further that after withdrawal, however short the time, if sold the taxpayer is obligated to collect another sales tax. Appellant says this is double taxation and that while permissible, is to be avoided wherever possible. Paramount-Richards Theatres v. State, 256 Ala. 515, 55 So.2d 812. Appellee says it is not double taxation, since the taxpayer would pay only the withdrawal tax and the purchaser would pay the sales tax. This is contrary to what we said in both the Helburn and Kershaw cases, which, as we have said above, is in effect that the purpose of both § 752(1) (j) and § 786(2) (f) (h) was to reach transactions which could not be taxed otherwise. As we have shown, there was no such withdrawal as to prevent levy of the sales tax. Moreover, according to appellee's postulate there would be double taxation if appellant paid a "withdrawal" tax, and then upon selling the plane collected and paid another.

Appellee contends that its position is fortified by the fact that appellant on its income tax return took credit for depreciation of some of the planes involved here and going into its inventory. This we think is not persuasive. Though appellant may have claimed depreciation in reference to income tax, this would not affect the sales tax. As we have shown the testimony is to the effect that the selling price of a plane is not affected by its use in rental service, and of course the seller is obligated to collect sales tax based on what he actually receives for the plane.

We do not have before us a situation of complete consumption of personal property, as in the Kershaw case. We do not have a case where the property cannot be taxed because there was no sale to another, to obviate which we have observed was the purpose of the act. To repeat, the State's real position is that the statute comprehends a real imposition of two taxes on the same property. With this we are unable to agree.

We of course take note of the rule of construction that in case of doubt the tax law should be liberally construed in favor of the taxpayer. Helburn Co., supra; Paramount-Richards, supra.

We, therefore, conclude that the decree appealed from was grounded in error.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.

### On Application for Rehearing

SIMPSON, Justice.

Appellee urges on application for rehearing that as a result of our original opinion, supra, the Department of Revenue will have much difficulty in administering the statute dealt with, Code 1940, Tit. 51, § 786(2) (f) (h), and that the State will suffer much loss of revenue. In sum, it "views with alarm" and argues that we have so interpreted the statute as that any tangible personal property bought at wholesale and withdrawn from stock and used by the person so withdrawing same, to be subject to the tax, must be fully consumed. In this counsel for appellee are in error. In distinguishing the Kershaw case, 273 Ala. 215, 137 So.2d 740 from the case at bar we observed that some of the machines in Kershaw were *consumed* in use or "junked", and that in this case there was no question of consumption through use. Moreover, here we pointed out that appellee's theory was that any withdrawal, however short the time, gave rise to the sales tax. In this case we were dealing with the case presented upon its own peculiar facts. The evidence presented by appellant revealed an unusual course of dealing in its business—using newly purchased planes in rental service and subsequently selling the planes at the original sale price. Appellee here argues that it is contrary to normal business practice to demand and receive the original price for used personal property. But appellee offered no evidence countervailing appellee's evidence as to this factor of its business.

The case was treated by us upon the theory and evidence presented by the parties. Our decision does not extend to situations different from that in the instant case as disclosed by the facts summarized by us in the opinion, supra.

To reiterate the substance of our conclusion: The statute was intended to reach transactions which could not be taxed otherwise. There is argument in appellee's brief that "the property could lose value or be partially consumed in the use. The later sale of the property would result in sale at reduced value and the tax take would be less. The retailer if allowed to follow this procedure would be using and consuming in part merchandise on which no tax has been paid".

The case, insofar as the State is concerned, was not tried upon the theory thus expressed. Its theory was, as we have said, that any rental or use gave rise to the tax for withdrawal and that a subsequent sale, no matter the price received nor how soon sold, warranted another tax. So far as appears, the planes were sold for their fixed or original price, and the State ultimately derived its full "tax take". It follows that we cannot and should not here enter upon the solution of a hypothetical or probable case.

Opinion extended and application for rehearing overruled.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.