(Nos. 39060-61 Cons.—

ILLINOIS ROAD EQUIPMENT Co., Appellee, *vs.* DEPARTMENT OF REVENUE, Appellant.—(McELROY ROLAND MACHINERY COMPANY, Appellee, *vs.* SAME Appellant.)

*Opinion filed May 20, 1965.*

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL, EDWARD A. BERMAN, A. ZOLA GROVES, and JOHN T. O'TOOLE, Assistant Attorneys General, of counsel,) for appellant.

BROWN, HAY & STEPHENS, of Springfield, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

In separate administrative review proceedings the circuit court of Sangamon County reversed use tax assessments made by the defendant, Department of Revenue of the State of Illinois, against each of the plaintiffs, Illinois Road Equipment Co. and McElroy Roland Machinery Co. The revenue is involved, and defendant has appealed from both judgments directly to this court. We have consolidated the causes for opinion since each involves substantially similar facts and questions of statutory construction.

Plaintiff Illinois Road Equipment Co. is a retail seller of heavy construction machinery, such as bulldozers, road graders and the like. Its principal business is the sale of new machines which it purchases at wholesale from the manufacturer, although it also reconditions and sells used machines which it has taken in as trade-ins on the sale of new machines. During the period July, 1956, thru June, 1960, plaintiff sometimes rented new and reconditioned machinery to prospective buyers for the purpose of allowing them

to ascertain whether the machinery suited their particular needs. It is this practice which defendant contends subjected plaintiff to use tax liability.

During the trial rental period, which lasted from one to ninety days, or in a few cases longer, plaintiff charged rent which was usually applied against the total selling price if the customer decided to buy the machine. In the event of a sale the retailer's occupation tax, measured by the selling price, was paid. However, if the customer decided that the machine was not suited to his requirements, he paid the specified rental charges and returned the machine to plaintiff, who then proceeded to attempt to sell the machine to another buyer. With respect to some used machines it appears that plaintiff rented the machines to some customers who may not have expressed a definite intent to purchase the machine if it performed to his expectations.

At all times that any machine was rented out it remained in plaintiff's inventory of goods for sale, and plaintiff's president testified that "about ninety-five percent of the time when we lease used equipment we reserved the right to sell it". There is further evidence that plaintiff retained no machinery for the primary purpose of rental, and that during the years here involved the amount of rent received averaged less than one percent of plaintiff's annual gross income.

Plaintiff McElroy Roland Machinery Co. is also engaged in the business of selling heavy road and construction machinery at retail. During the period March 1959 to June 1960, it rented out some of its machinery to prospective purchasers pursuant to a written lease with option to purchase at a fixed price, while other machines were rented out on a trial basis without an option to purchase. It appears that in most cases the rental period was of short duration. In many instances machines were sold to the customer who originally rented them, although there were cases in which the machines were retaken by plaintiff because the

machine did not perform to the customer's satisfaction or the customer had financial difficulties. When a machine was retaken, plaintiff collected the rent due and then attempted to sell the machine to another buyer. In the event of a completed sale, the buyer was given credit for rental payments made, and retailer's occupation tax was paid on the transaction. It is undisputed that all of the machinery in plaintiff's inventory was held for sale and none for the primary purpose of rental.

The Department of Revenue levied use taxes measured by the price of new machines which were purchased by each plaintiff and rented out to prospective buyers during the respective periods in question. Use taxes were also assessed upon the price of parts purchased by plaintiff Illinois Road Equipment Co. and incorporated into traded-in machines which were reconditioned and rented out prior to sale. The Department contends, as it did below, that the act of renting the machinery constituted a taxable "use" of the new machines by each plaintiff and as to plaintiff Illinois Road Equipment Co., a taxable "use" of the parts installed in used machinery. In support of this contention defendant argues that both plaintiffs were engaged in separate and distinct enterprises of (1) "purchase-and-sale" and (2) "purchase-and-rental, with a subsequent sale" which justifies the imposition of a retailer's occupation tax on the privilege of engaging in the former business and a use tax on the privilege of engaging in the latter.

We are of the opinion that the Use Tax Act was not intended to impose a tax on the practice of renting employed by both plaintiffs in these cases. The act provides that a tax is imposed upon "the privilege of using in this State tangible personal property purchased at retail * * * from a retailer". (Ill. Rev. Stat. 1959, chap. 120, par. 439.3) "Use" is defined as "the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the

sale or· use for demonstration by him of that property in any form as tangible personal property in the regular course of business. 'Use' shall not mean the interim use of tangible personal property by a retailer before he sells such tangible personal property and shall not mean the physical incorporation of tangible personal property, as an ingredient or constituent, into other tangible personal property (a) which is sold in the regular course of business * * *." Ill. Rev. Stat. 1959, chap. 120, par. 439.2.

The evidence established that the act of renting machinery was in each case simply a method used by plaintiffs to demonstrate and promote the sale of the machinery and was not a separate and distinct enterprise from the business of selling the machinery at retail. At no time was any of the machinery here involved held by either plaintiff for any ultimate purpose other than sale at retail, and the practice of renting on a trial or promotional basis is in no way inconsistent with that purpose. (See *Herman Brown Co.* v. *Johnson,* 248 Iowa 1143, 82 N.W.2d 134;. *Montgomery Aviation Corp.* v. *State,* 275 Ala. 266, 154 So. 2d 24.) On the facts of these cases we think that the practice of renting machinery is either a use for demonstration or an interim use by a retailer prior to sale, both of which uses are expressly excluded from the definition of a taxable "use" by the Use Tax Act.

We think it is also significant that the basic purposes of the Use Tax Act are to complement the Retailers' Occupation Tax Act by preventing the evasion of tax on interstate purchases and to protect Illinois retailers from the competitive advantage of out-of-state retailers who, under their State law, are not required to collect a sales tax from Illinois purchasers. (*Granite City Steel Co.* v. *Department of Revenue,* 30 Ill.2d 552: *Turner* v. *Wright,* 11 Ill.2d 161.) It is apparent that if the construction of the Use Tax Act argued for by the Department of Revenue was upheld on the facts of these cases, there would result two taxes on the

same piece of machinery—a use tax at the time the machine was rented by plaintiffs and a retailer's occupation tax when the machine was eventually sold. Such a result would in no way further the above stated purposes of the act but would instead have the contrary effect of discriminating against Illinois retailers by the imposition of two taxes.

The judgments of the circuit court of Sangamon County are affirmed.

*Judgments affirmed.*