L & L SALES AND SERVICES, INC., Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Fourth District   No. 15150

Opinion filed February 7, 1979.

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellant.

Winkelmann & Winkelmann, of Urbana, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case concerns the liability under section 3 of the Use Tax Act (UTA) (Ill. Rev. Stat. 1975, ch. 120, par. 439.3) of an entity in the business of selling heavy construction equipment at retail and also leasing that equipment with or without an operator. The use tax imposed would be based upon the price paid by the entity in purchasing the equipment. Most of the equipment was subsequently sold by the entity at retail and a sales tax was then paid on the sales price less discount pursuant to section 3 of the Retailer's Occupation Tax Act (ROTA). Ill. Rev. Stat. 1975, ch. 120, par. 442.

After an audit of the books of plaintiff L & L Sales and Services, Inc., covering the operation from July 1973 to August 1976, an auditor for defendant, Department of Revenue, assessed plaintiff for unpaid use taxes for that period. Plaintiff filed a protest and after a hearing and rehearing before defendant, the assessment was fixed at the sum of $19,501.91 on December 22, 1977. On January 23, 1978, plaintiff filed a complaint for administrative review before the circuit court of Champaign County. After a hearing, that court, on July 21, 1978, entered an order reversing and setting aside the assessment. Defendant appeals.

The evidence presented was not in substantial dispute. Plaintiff is a franchised dealer for J. I. Case Co. selling utility construction equipment most of which is manufactured and sold to them by Case as was all equipment involved here. Plaintiff advertised in a local telephone directory not only as a seller of such equipment but also as leasing and doing construction with the equipment. For the period in question, about 29% of plaintiff's gross revenue came from leasing and construction. All of the equipment assessed had been kept in plaintiff's inventory and no depreciation had been taken on it. Most was later sold at retail with a sales tax paid based on the sales price. In the use of the equipment in construction, an operator was furnished with the equipment.

Plaintiff's president testified that all equipment had been obtained with the intent of selling it at retail but that plaintiff got into the business of renting during the period of time in question because the slowdown in construction which took place then diminished their sales and they needed the income to finance their inventory of this heavy equipment. He also testified that he considered the leasing to help generate sales and that some leasing was done with persons as a demonstration of the equipment with the expectation that the lessee would purchase the equipment. He stated that if a purchase took place, the rent payments were applied to the sales price and that these sums were included in the figure upon which the sales tax was based. He said that when equipment was rented, it was usually subject to recall if a purchaser wanted the equipment.

Section 3 of UTA (Ill. Rev. Stat. 1975, ch. 120, par. 439.3) provides in pertinent part that "[a] tax is imposed upon the privilege of using in this State tangible personal property, * * * purchased at retail from a retailer." To prevent both use and sales tax from being collected on a single Illinois sale, section 3 of UTA (Ill. Rev. Stat. 1975, ch. 120, par. 439.3) contains an offsetting provision.

Section 2 of UTA states in part:

" 'Use' means the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of such property in any form as tangible personal property in the regular course of

business to the extent that such property is not first subjected *to a use for which it was purchased,* and does not include the use of such property by its owner for demonstration purposes: * * *. 'Use' does not mean the interim use of tangible personal property by a retailer before he sells such tangible personal property * * *.

* * *

'Sale at retail' means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use, and not for the purpose of resale in any form as tangible personal property to the extent not first subjected to a use for which it was purchased, for a valuable consideration: * * *." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 120, par. 439.2.

The parties do not dispute that the leasing and construction use of the equipment would be a "use" of the property unless it comes within the demonstration or interim use exceptions of section 2.

Both sides rely heavily upon the decision in *Illinois Road Equipment Co. v. Department of Revenue* (1965), 32 Ill. 2d 576, 207 N.E.2d 425. There the supreme court affirmed a circuit court order, on administrative review, setting aside a Department of Revenue use tax assessment against two equipment dealers who rented some of the equipment in their inventory. The rental revenue of one dealer was less than 1% of its gross revenue, while that of the other was not stated. The evidence indicated that the rentals were made as a method of inducing sales, although sales did not always result. As in the instant case, equipment rented was subject to recall if required by a purchaser. Unlike in the instant case, the dealers apparently did not advertise separately that they made rentals. The court stated:

"The evidence established that the act of renting machinery was in each case simply a method used by plaintiffs to demonstrate and promote the sale of the machinery and was not a separate and distinct enterprise from the business of selling the machinery at retail. At no time was any of the machinery here involved held by either plaintiff for any ultimate purpose other than sale at retail, and the practice of renting on a trial or promotional basis is in no way inconsistent with that purpose. (See *Herman Brown Co. v. Johnson,* 248 Iowa 1143, 82 N.W.2d 134; *Montgomery Aviation Corp. v. State,* 275 Ala. 266, 154 So. 2d 24.) On the facts of these cases we think that the practice of renting machinery is either a use for demonstration or an interim use by a retailer prior to sale, both of which uses are expressly excluded from the definition of a taxable 'use' by the Use Tax Act." 32 Ill. 2d 576, 580, 207 N.E.2d 425, 427.

The *Road Equipment Co.* court also pointed out that the purpose of

UTA was to complement ROTA by preventing evasion of sales taxes on goods purchased outside of the state for use within the state. It described the interpretation put on UTA by the Department of Revenue as one which would create double taxation by imposing upon the lessor dealer (1) at time of leasing, a use tax based upon the equipment's purchase price paid by the dealer, and (2) at time of ultimate sale at retail, a sales tax based upon the retail sales price less trade-in value.

Defendant relies on that court's emphasis upon the indication that those dealers' rentals were closely related to the promotion of sales and that the dealers were not in separate businesses of selling and renting the machinery. Plaintiff relies upon that court's emphasis that the machinery was held for the "ultimate purpose" of "sale at retail" and the court's disapproval of a construction of UTA that would impose a double tax burden on the dealer who rents equipment prior to its sale.

■■ We do not consider plaintiff's separate advertising concerning rentals and construction work nor the fact that many rentals were made without an expectation of sale to the lessee to be conclusive as to whether plaintiff was making a "use" of the equipment by renting it. Section 2 of UTA states that the term "use" does not "include the sale of such property * * * in the regular course of business to the extent that such property is not first subjected to a use for which it was purchased * * *." The section also provides that "use" does not mean "the interim use * * * by a retailer before he sells" the property at retail. Taking these provisions together with the supreme court's statement that UTA was not meant to impose double taxation upon an entity which first rents and then sells property at retail, we conclude that when equipment is originally purchased with the intent of selling it at retail and is subsequently rented with the intent remaining to ultimately sell it at retail, the rental is an exempt interim use even though the rentals are not purely for demonstration purposes. *Road Equipment Co.* spoke of the demonstration exemption and the interim use as being separate.

■■ Plaintiff's president's testimony that the equipment was purchased for resale at retail was not directly refuted. His explanation that the extent of the renting arose from the economic conditions necessitating a need to obtain cash to pay the finance charges on the equipment was probable and worthy of belief. Plaintiff's practice of accounting for the equipment as inventory and not depreciating it is consistent with a continued intent to ultimately sell it at retail. The rental of some of the property upon which use tax was assessed was shown to be for demonstration purposes. We do not determine the relatively large amount of rentals not shown to be directly for demonstration purposes nor the separate advertising for rentals done by plaintiff to negate that the ultimate purpose of plaintiff was at all times to sell the equipment at retail. Any conclusion otherwise

by the Department of Revenue was contrary to the manifest weight of the evidence. *Marion Power Shovel Co. v. Department of Revenue* (1969), 42 Ill. 2d 13, 244 N.E.2d 598; *Thermos v. Department of Revenue* (1976), 37 Ill. App. 3d 410, 346 N.E.2d 47.

This case differs from *Thermos* where use tax was imposed upon one operating a camera store and renting cameras. No indication was given in that case that the rented cameras were purchased with the ultimate intent to resell at retail nor that any rented cameras were subject to recall for sale. Neither was it shown whether these cameras were kept in inventory and not depreciated. In any event we consider the rationale of *Road Equipment Co.* to control the instant case.

We affirm the order of the circuit court. Because of our views expressed herein we need not consider plaintiff's contention that it was not subject to use tax on the equipment in question because it was not purchased at retail from a retailer.

Affirmed.

MILLS and TRAPP, JJ., concur.