WEAVER-YEMM CHEVROLET, INC., Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Third District   No. 79-837

Opinion filed August 13, 1980.

Tyrone C. Fahner, Attorney General, of Chicago (George H. Klumpner, Assistant Attorney General, of counsel), for appellant.

Burrel Barash, of Barash & Storzebach, of Galesburg, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal by the Illinois Department of Revenue from a judgment of the Circuit Court of Knox County reversing a use tax and municipal use tax assessment in the amount of $4671.36 against the taxpayer, Weaver-Yemm Chevrolet. We affirm.

In 1976 a field audit was performed by the Illinois Department of Revenue of the plaintiff's business. As a result of the audit two separate assessments were made by the department. The second assessment, which is at the center of this controversy, was comprised of four separate categories of vehicle uses. Only two categories of uses are of concern in this appeal. One category was cars driven by the children of the owners of the business, neither of whom were employees of Weaver-Yemm Chevrolet. The other category was service trucks used by employees of Weaver-Yemm's parts department to haul parts and supplies. Both the

cars driven by the children of the owners of Weaver-Yemm and the trucks used by the service department were subsequently sold, and a retailer's occupation tax was collected and paid on these sales.

Weaver-Yemm Chevrolet challenged the assessment of a use tax on the ground that the uses of the cars by the children of the owners of the business and of the trucks by the service department were interim uses, and consequently exempt from tax (Ill. Rev. Stat. 1977, ch. 120, par. 439.2). On August 8, 1977, a hearing was held by the department. The hearing officer concluded that "cars used for personal use by children of the owners and service trucks used by the taxpayer * * * [were] clearly for the first and principal use of the taxpayer and are taxable pursuant to the Use Tax and Municipal Use Tax." A revised final assessment in the amount of $4671.36 was issued on June 6, 1978.

On administrative review, the circuit court reversed the decision of the department, finding "[t]he use of the vehicles in each of the categories set forth in the record was an interim use." On appeal from the judgment of the circuit court, the only issue is whether the use of cars by the children of the owners of Weaver-Yemm Chevrolet and the use of trucks by the service department constituted interim uses, and were therefore exempt from use tax.

The Illinois use tax is a tax imposed upon the privilege of using in the State of Illinois tangible personal property, other than farm chemicals, purchased at retail from a retailer (Ill. Rev. Stat. 1977, ch. 120, par. 439.3). "Use" is defined as the "exercise by any person of any right or power over tangible personal property incident to the ownership of that property, except that it does not include * * * the use of such property by its owner for demonstration purposes: * * *. 'Use' does not mean the interim use of tangible personal property by a retailer before he sells such tangible personal property * * *." Ill. Rev. Stat. 1977, ch. 120, par. 439.2.

There are a number of cases, all of which involve the rental of tangible personal property prior to sale, which are helpful in determining whether the use of the cars by the children of Weaver-Yemm's owners and the use of the trucks by the service department were interim uses and consequently exempt from the imposition of a use tax. The seminal case is *Illinois Road Equipment Co. v. Department of Revenue* (1965), 32 Ill. 2d 576, 207 N.E.2d 425. *Illinois Road Equipment Co.* involved two retail sellers of heavy construction equipment who would periodically lease machinery to prospective buyers. During the time the machinery was being rented it remained in the sellers' inventories. The department, taking the position that the act of renting the machinery constituted a taxable use under the Use Tax Act, levied a tax against both companies. The supreme court, however, disagreed, holding that the Use Tax Act

was not intended to impose a tax on the practice of renting property held for eventual sale:

"The evidence established that the act of renting machinery was in each case simply a method used by plaintiffs to demonstrate and promote the sale of the machinery and was not a separate and distinct enterprise from the business of selling the machinery at retail. At no time was any of the machinery here involved held by either plaintiff for any ultimate purpose other than sale at retail, and the practice of renting on a trial or promotional basis is in no way inconsistent with that purpose. (See *Herman Brown Co. v. Johnson*, 248 Iowa 1143, 82 N.W.2d 134; *Montgomery Aviation Corp. v. State*, 275 Ala. 266, 154 So. 2d 24.) On the facts of these cases we think that the practice of renting machinery is either a use for demonstration or an interim use by a retailer prior to sale, both of which uses are expressly excluded from the definition of a taxable 'use' by the Use Tax Act." 32 Ill. 2d 576, 580, 207 N.E.2d 425, 427. Accord, *Humphrey Cadillac and Olds, Inc. v. Department of Revenue* (1979), 68 Ill. App. 3d 27, 385 N.E.2d 846.

In response to *Illinois Road Equipment Co.*, the department promulgated Illinois Use Tax Rule No. 3, which states in pertinent part:

"The leasing of tangible personal property by a person who is engaged in the business of selling that kind of property at retail is within the demonstration or interim use exemption and is not a taxable use if such property is not held primarily for rental or leasing, but is carried in the inventory of goods for sale and is held primarily for sale, with the leasing being done to prospective buyers for the purpose of allowing them to ascertain whether or not the property suits their particular needs and for the purpose of trying to induce them to buy such property (i.e., if the leasing or renting is done merely to try to promote the sale of such tangible personal property)."

■■ In the instant case, the cars and trucks owned by Weaver-Yemm Chevrolet and used, respectively, by the children of the owners and the service department, were not used to promote sales, nor did their use constitute a leasing. The department argues that as a consequence under *Illinois Road Equipment Co.* and Tax Rule No. 3 the interim use exemption is inapplicable. We disagree. Although it is true that the use of the vehicles in the case at bar was not for the express purpose of promoting their sale, such a fact does not preclude the use from being an interim use. "[W]hen equipment is originally purchased with the intent of selling it at retail and is subsequently rented with the intent remaining to

ultimately sell it at retail, the rental is an exempt interim use even though the rentals are not purely for demonstration purposes." (*L & L Sales and Services, Inc. v. Department of Revenue* (1979), 68 Ill. App. 3d 329, 332, 385 N.E.2d 925, 927.) The department's attempt to equate the two exemptions is without merit.

■■ Nor do we agree with the department that the interim use exemption applies only to leased or rented property held for ultimate sale. The department argues that the recognition of an interim use exemption is not to be extended to uses other than rentals prior to sale, relying primarily on Use Tax Rule No. 3 and the fact that the cases dealing with the interim use exemption have involved rentals (*Illinois Road Equipment Co.; L & L Sales and Services*). With regard to the department's reliance on Tax Rule No. 3, we do not find that it necessitates the invocation of the maxim *expressio unius est exclusio alterius*. The primary authority for determining what constitutes an interim use is not the department's own rules and regulations, but the Use Tax Act itself. All section 2 of that act states with regard to interim uses is that " 'use' does not mean the interim use of tangible personal property by a retailer before he sells such tangible personal property * * *." (Ill. Rev. Stat. 1977, ch. 120, par. 439.2.) The act does not limit the scope of interim use to rentals or leases. In addition, it is obvious that Use Tax Rule No. 3 is merely the department's interpretation of *Illinois Road Equipment Co.*, which dealt with rentals of property by a retailer before ultimate sale. We reject the view that would have us exclude all other potential interim uses from the use tax exemption simply because the cases thus far involving the interpretation of the interim use exemption of section 2 of the Use Tax Act have involved rental of property held for sale. Such an interpretation would unduly limit the definition of interim use, and restrict its scope to a point not intended by our legislature. Whether a use is to be classified as an interim use is to be determined on a case-by-case basis. It is not to be limited to rentals because only rentals have thus far been recognized to constitute an interim use.

■■ We are of the opinion that the use to which the vehicles in the instant case were put is an interim use and exempt from use tax. The vehicles were purchased by Weaver-Yemm Chevrolet with the intent of selling them at retail. This intent to ultimately sell at retail continued while the vehicles were being used by the children of Weaver-Yemm's owners and by the service department. There was no ultimate purpose for the vehicles other than a retail sale, and we do not consider the use of the vehicles in the instant case to be inconsistent with that purpose. Additionally, imposition of a use tax here, like imposition of a use tax on the rental of personal property prior to sale, would result in double taxation on a single piece of property because the plaintiff pays a retailer's occupation tax when the vehicles are eventually sold. Such double taxation

does not serve the purpose of the Use Tax Act, and is to be avoided. (*Illinois Road Equipment Co.*, 32 Ill. 2d 576, 580, 207 N.E.2d 425, 427.) Our holding that the use to which the vehicles were put constituted an interim use prevents this double taxation and its resultant discriminatory effect against Illinois retailers.

The judgment of the Circuit Court of Knox County, reversing the decision of the Department of Revenue, is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.