W. Va. Tractor & Equipment Co. *etc.*

*v.*

David C. Hardesty, Jr., State Tax Commr.

(No. 14426)

*and*

Wright-Thomas Equipment Co., *etc.*

*v.*

David C. Hardesty, State Tax Commr.

(No. 14427)

Decided July 14, 1981.

*Chauncey H. Browning,* Attorney General, *Michael G. Clagett,* Assistant Attorney General, for appellant.

*Spilman, Thomas, Battle & Klostermeyer* and *G. Thomas Battle* for appellee.

NEELY, JUSTICE:

These cases were consolidated in this Court to determine whether certain lease and lease/purchase agreements should be considered as sales or rentals for the purposes of the State's Business and Occupation Tax. The transactions in question involve heavy machinery used in construction and surface mining. Both appellees engage in the sales, service and rental of such machinery. Many of the customers of appellees cannot afford to buy new equipment when needed, either because of the large down payment required, or because incurring debts of that magnitude would make pre-qualification and bonding for state road projects more difficult and expensive. To facilitate sales in these situations the appellee companies follow the trade practice of allowing their customers to lease the equipment initially. In general, the customer is required to keep the equipment and pay rent for at least six months. However, at any time during the six month period the customer may buy the equipment outright and apply to the down payment all of the rental payments already made.

If the customer does not buy the equipment during the first six months and wants to keep it longer, he may continue to lease it from month to month while retaining an option to buy. Both appellees transfer title to customers when the sum of monthly payments equals the initial purchase price of the equipment plus a finance charge. Such sales are called lease payouts. In effect, then, there are two methods by which equipment can be purchased: the exercise of the option to buy and the lease payout. Most of

these agreements are oral, but at times they are written. While the written agreements specifically disclaim any purchase options, both appellees demonstrate that this disclaimer is routinely waived orally.[1]

---

[1] The following is an example of the standard form lease used by appellee West Virginia Tractor:

### LEASE AGREEMENT

THIS LEASE, Made this 19 day of August 1975 by and between WEST VIRGINIA TRACTOR & EQUIPMENT COMPANY, a corporation, of the City of Charleston, State of West Virginia, hereinafter called the Lessor, and Pigeon Creek Coal Company, of the City of Pigeon Creek, State of West Virginia hereinafter called the Lessee:

WITNESSETH:

That whereas the Lessee requires the use of the property hereinafter described for the purpose of ____ and the Lessor is willing to lease said property for said purposes;

NOW, THEREFORE, It is agreed between the Lessor and Lessee as follows:

1. In consideration of the payment of the rentals hereinafter described, when and as due, and the performance of the covenants and agreements hereinafter set forth, the Lessor hereby leases to the Lessee the following described property, viz,

    1–New Murphy Model 872 CT Diesel Generator 360 KW, 240 volt, 60 cyclo.

      Engine S/N A-916, Generator S/N 174930412

F.O.B. cars at Charleston, W. Va. for a term of Thirty months, commencing on the date hereof a rental of Two Thousand Dollars ($2,000.00), of which $2,000.00 is payable on the signing of this agreement, being the first month's rental, and the balance of said rental is payable as follows:

Monthly in advance as billed and the Lessee promises to pay said rentals to said Lessor, its successors or assigns.

2. It is further understood and agreed that the rental rate herein set forth is to cover what is considered a normal day's work and, for time in excess of normal day's work during any thirty-day period will be paid for by the Lessee on a pro rata basis based on the above monthly rate, lessors [sic] liability for rental to be computed to date of return of equipment to Lessor, freight paid.

3. The Lessee acknowledges receipt of the above described property in good order and condition, and upon the expiration of the term of this lease, or upon the earlier termination thereof by the lessor, as hereinafter provided, the Lessor shall be entitled to the immediate possession of said property, and the Lessee shall immediately deliver same, transportation charges paid, to the Lessor at its place of business in Charleston, West Virginia, in good order and condition, ordinary use, wear and tear thereof excepted.

During the contract period the appellees retain title to the equipment but they require their customers to insure it. The customers pay all personal property taxes for the equipment while it is in their possession. Appellees do not take depreciation on the equipment nor do they take

4. The Lessee shall have the right to make any reasonable and lawful use of said machinery, and shall take proper care thereof, and at Lessee's own cost and expense shall make all necessary repairs and replacements, and shall keep the same in proper repair at all times.

5. The said property will not be moved from Mingo County, State of W. Va., without the written consent of the Lessor.

6. If said equipment shall be lost, destroyed, damaged, rendered unfit for service or not returned for any reason, then the Lessee shall pay to the Lessor the value thereof, which is $49,958.00

7. The Lessee shall keep the said property insured against loss or damage by fire in an amount not less than the value thereof, with proper loss payable clause to the Lessor therein.

8. The Lessor shall not in any case or under any circumstances be held liable to the Lessee or any other persons for any loss or damage of any kind or character whatsoever to persons or property arising from, or in any manner connected with, the possession, use or operation of said property.

9. The Lessor has made no warranties other than such as are endorsed hereon in writing.

10. THIS TRANSACTION IS NOT A CONDITIONAL SALE, OR SECURITY AGREEMENT, BUT IS A LEASE of the aforesaid property and the title thereto shall remain in the Lessor and shall not pass to the Lessee, and said Lessee shall not nor shall he have the option of becoming the owner of said leased property.

11. In the event the Lessee defaults in the payment of any above mentioned rental installments, or a proceeding in bankruptcy, receivership or insolvency be instituted by or against the Lessee or Lessee's property, or if the Lessee shall make an assignment for the benefit of creditors, the Lessor shall be entitled to immediate possession of the leased property.

12. If the Lessee fails to make the aforesaid payments when they become due, or fails to keep or perform the conditions, covenant and agreements herein provided to be kept and performed, or in any way violates the same, then the Lessor, at its option, and without notice or demand, may take any and all lawful ways and means to collect all money due to the Lessor hereunder; or, if the Lessor shall deem it to its best interest so to do in order to secure itself against loss or damage, then the Lessor, without notice or demand, may enter upon the premises where the said property, or any part thereof, may be, and take possession thereof, and remove the same therefrom and thereafter hold the same absolutely free from all claims of Lessee; and, at its option, the Lessor may terminate this agreement, and thereupon

investment tax credits, and their customers treat their payments as expenditures for capital, not rent payments, for federal tax purposes. The Internal Revenue Service characterizes these lease agreements as sales because the purchase option is exercisable within a period clearly less than the expected life of the equipment and the rental payments cover a substantial portion of the costs of the equipment, see *I.R.C.* § 162(a) (1976); Rev. Rul. 540, 1955-2 C.B. 39. The conclusion that the parties intend sales to transpire is supported by the fact that 95% of the equipment leased by appellee Wright-Thomas eventually is sold to lessees and 70% of appellee West Virginia Tractor's dollar sales volume is derived from what were initially lease agreements.

If these agreements are sales, they enjoy a lower tax rate under *W. Va. Code*, 11-13-2(c) [1971] than if they are leases

---

the Lessee will deliver the said property to the Lessor on demand and pay to the Lessor all the aforesaid rentals, together with all costs and expenses incurred in and about the retaking of said property, and the return thereof to the Lessor, including attorneys fees incurred for consultations, in any action that may be instituted for the recovery of said property, or the enforcement of any of the Lessor's rights.

13. The Lessor shall have the right to enforce one or more remedies hereunder, successively, or concurrently, and such action shall not operate to prevent it from pursuing any further remedy which it may have hereunder or under the laws of the State in which said property may be located.

14. Executed in quadruplicate, one copy of which was delivered to and retained by the Lessee, this 19 day of August, 1975.

PETITIONER'S EXHIBIT NO. 2 B40

WEST VIRGINIA TRACTOR & EQUIPMENT COMPANY

By *E. B. Basham* (s)

Its*V.P.*

Pigeon Creek Coal Company (SEAL)

By *Jerry Hoffman* (s)
Lessee

Address *Attn: Elliott Maynard*

Mingo County Courthouse
Williamson, West Virginia

of equipment, *Code,* 11-13-2(i) [1971]. Taxpayers prevailed in their appeal to the Circuit Court of Kanawha County from a ruling by the State Tax Commissioner which held these transactions to be leases. The circuit court concluded, however, that the substance and not the form of a transaction is decisive for tax purposes and it held that the lease/purchase arrangements should be taxed at the lower sales rate. The Tax Commissioner now appeals from that decision. We disagree with the circuit court's ruling and therefore we reverse.

## I

Appellees claim that for all practical purposes they consider these agreements sales, not the furnishing of property for hire. They conclude, therefore, that their income from the lease transactions should be taxed at the rate for wholesale sales, *Code,* 11-13-2(c) [1971] because *in substance* they *are* sales, or alternatively, because they are necessary to and thus included in the business of wholesale sales. Appellant Tax Commissioner claims, however, that regardless of the parties' intentions, the transactions are leases and should be taxed at the higher rate set for the leasing of property, *Code* 11-13-2(i) [1971]. While the leases may be convenient for appellees, they are not part of the business of selling at wholesale.

Appellees' argument is essentially that their tax should be assessed on the basis of the substance of their transactions, not the form. However, tax law is a creature of statute and it is the statute which determines the issue. It is well settled in this State that when a tax statute is clear and free from ambiguity, it will be applied and not construed. *State ex rel. Hardesty v. Aracoma-Chief Logan No. 4523, V.F.W.,* 147 W. Va. 645, 129 S.E.2d 921, 924 (1963); *J. D. Moore, Inc. v. Hardesty,* 147 W. Va. 611, 129 S.E.2d 722, 724-25 (1963). In *Code,* 11-13-1 [1971], sales are defined to include "any transfer of the ownership of or title to property." It is clear that appellees are not engaged in sales because the transactions by their own terms do not involve the transfer of ownership or title in the property. Unless the lessee chooses to buy the equipment at the end of the

rental period he has received nothing for his money other than the use of the equipment during the rental period.

Moreover, the written agreements in the record all call themselves leases and disclaim any options to buy.[2]

In other cases we have noted that the actual rights and duties owed to third parties and the rest of the world which are established by the terms of taxpayers' transactions are controlling for purposes of the Business and Occupation Tax, *see, e.g., Frazee Lumber Co. v. Haden,* 156 W.Va. 844, 197 S.E.2d 634 (1973) (since contract between taxpayer and third party clearly identifies taxpayer as timber producer, he is liable as such under *Code,* 11-13-2(a)); *State ex rel. Hardesty v. Aracoma-Chief Logan No. 4523, V.F.W.,* 147 W.Va. 645, 129 S.E.2d 921 (1961) (when fraternal lodge holds itself out to public as caterer for profit, in competition with commercial restaurants and caterers, income from such catering is not exempt from tax on sales, *Code,* 11-13-2(c), as income of charitable organization, *Code,* 11-13-3). In the cases before us, the rights and duties of appellees are established in the agreements they chose to call leases, not sales. The terms of the agreements provide for the customers' use of the equipment, not ownership. The agreements do not provide the customers with any interest in the property. Appellees cannot complain now that the State Tax Commissioner takes them seriously.

It does not matter for State Business and Occupation Tax purposes that the Internal Revenue Service may treat these agreements as sales, not leases. The I.R.S. would tax appellees at the same rate whether their income were from sales or leases. Their concern is with whether appellees'

---

[2] See clause 10 in n.1, *supra.* Also, the following comes from the standard form contract used by appellee Wright-Thomas.
THIS IS A CONTRACT OF LEASE ONLY, NO REPRESENTA-TIONS, UNDERSTANDINGS, PROMISES, OPTIONS TO PUR-CHASE OR AGREEMENTS, ORAL OR WRITTEN, EXPRESS OR IMPLIED, HAVE BEEN MADE BY EITHER PARTY WITH RESPECT TO THE SUBJECT MATTER OF THIS LEASE AND THE EQUIPMENT LEASED HEREUNDER, EXCEPT AS EXPRESSLY PROVIDED. ANY ALTERATION OR MODIFICATION OF THIS LEASE SHALL BE IN WRITING AND SIGNED BY THE PARTIES HERETO.

customers may deduct their expenditures as rent and the I.R.S. is specifically required by statute to go behind the form of agreements to look at their substance for that purpose. In this regard the structure of the federal tax law differs explicitly from the State law since in the State system there is no express or implied authority to look at substance. Thus I.R.C. § 162 (a) (1976) provides that:

> There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including –
>
> . . .
>
> (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

For the I.R.S. to determine whether appellees' customers may take this deduction, they must determine that those customers neither have nor are taking title nor *have an equity interest in the equipment.* This requires an evaluation of the substance of the agreements and the intentions of the parties. Since the avowed purpose of the objective trade practice is to provide appellees' customers with equity in the equipment to facilitate purchases by them, this is an easy case for the United States to deny rental deductions. It is clear from the terms of these agreements that the lessee/purchaser is paying rent at a rate which affords him an opportunity to achieve an equity position and thus the rental payments are in excess of "ordinary and necessary" payments for the mere use of equipment.

However, the State Business and Occupation Tax does differentiate between rental and sales income and it has no similar implied mandate to go beyond the form of the transaction to determine its underlying characteristics. Since *Code* 11-13-2(c) hinges on whether ownership or title (not equity) has passed (as opposed to could potentially pass in the future), this is an equally easy case for the State of West Virginia to impose the tax at the rental, not sales,

rate. Unless a separate sale takes place, the lessee does not gain title or ownership.

## II

It is irrelevant that a large number of the lease agreements result in sales. Such sales are subsequent to the leases, not consequences of them. Also, a portion of them never result in sales, despite the parties' intentions at the outset. Apparently the business of leasing machinery is neither a necessary nor a sufficient precondition to the sale of such equipment and so is not an incident of the business of wholesale sales. *Cf. Appalachian Elec. Power Co. v. Koontz*, 138 W.Va. 84, 76 S.E.2d 863 (1953) (income derived from late payment surcharges is incidental to business as public utility so taxable under *Code*, 11-13-2(d), not at miscellaneous service rate, *Code*, 11-13-2(h)). Leasing the equipment is not the equivalent of use by the appellees nor is it done for demonstration purposes. This contrasts with *Illinois Road Equip. Co. v. Dep't of Revenue*, 32 Ill. 2d 576, 207 N.E.2d 425 (1965), relied upon by appellees (similar transaction held to fall under exceptions to State use tax as either interim use or use for demonstration by retailer).

We cannot conclude, therefore, that appellees' rental businesses are part of their wholesale sales businesses. Rather, leasing constitutes a separate component of their overall business and should be taxed separately, as established by *J. D. Moore, Inc. v. Hardesty*, 147 W. Va. 611, 129 S.E.2d 72 (1963). By the same token, the principles of *J. D. Moore* dictate that once the lease ends and a sale is consummated, the income from the sale should be taxed at the wholesale sales rate. Inasmuch as there are two distinct transactions, they constitute different components of appellees' businesses and are taxable separately. Thus once a sale transpires through exercise of the purchase option, further payments under the agreement should be taxed as sales under *Code*, 11-13-2(c) (1971).

We recognize that there are sound business reasons for appellees to want to structure their transactions in the way they have. We noted earlier that their customers find leasing makes bonding and pre-qualification requirements

cheaper and simpler for state road projects. Similarly, appellees may benefit from leasing rather than financing sales of the equipment should their customers go into bankruptcy. Appellees would be stayed from proceedings to recover the equipment if ownership had passed to the customer under a sale but not if possession passed under a lease, *see* 11 U.S.C. § 362 (a) (1979 Supplement).[3]

---

[3] *See* Clauses 11 and 12, n.1, *supra,* and the following clause from the Wright-Thomas Lease.

10. FAULT AND REMEDIES: If LESSEE fails to pay the rental or any other sums payable hereunder when the same become due or if LESSEE should default in or fail to perform any other term or condition hereof: or if a trustee shall be appointed for LESSEE or its property; or if LESSEE shall make an assignment for the benefit of creditors; or should LESSEE be the subject of any proceeding under the Bankruptcy Act or become insolvent or attempt to remove, sell, transfer, encumber, sublet or part with the possession of the Equipment or do any act or thing tending to impair the title of LESSOR, each such event being termed an event of default by the LESSEE under the Lease, LESSOR may:

  A. Proceed by appropriate court action or actions, either at law or in equity, to enforce performance by LESSEE of the applicable covenants and terms of this Lease or to recover damages for the breach of such covenants and terms hereof; or

  B. Terminate this Lease, whereupon all right, title and interest of LESSEE to or in the Equipment shall absolutely cease and determine as though this Lease had never been made; and thereupon LESSOR may, directly or by its agent, enter upon the premises of LESSEE or other premises where the Equipment may be or supposed to be and take possession thereof and thenceforth hold, possess and enjoy the same free from any right of LESSEE or its successors or assigns, including any receiver, trustee in bankruptcy or creditor of LESSEE, to hold and use said Equipment for any purposes whatever; but LESSOR shall nevertheless have a right to recover from LESSEE any and all amounts including rents, which under the terms of this Lease, may be then due and unpaid hereunder for use of said Equipment together with any damages in addition thereto which LESSOR shall have sustained by reason of the breach of any covenant of this Lease.

  C. The remedies provided by this Agreement in favor of LESSOR shall be cumulative and shall be in addition to all other remedies in LESSOR's favor existing at law or in equity.

Accordingly, the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

D. In any event, LESSOR may recover a reasonable sum for attorney's fees and such expenses as shall be expended or incurred in the seizure of items of Equipment, in the collection of any amount due hereunder, in the enforcement of any other right or privilege hereunder, or in any consultation or action in connection with any of the foregoing.