This is a sales tax case. From a judgment ordering a writ of mandamus to issue against the Commissioner of Revenue in favor of Campbell Associates, Inc., the Commissioner appeals.
Campbell is a multifaceted company comprised of construction, rental, steel fabrication and rubberlining divisions. The dispute in this case involves sales taxes arising from operation of Campbell's rubberlining division.
In July 1983, Campbell filed a petition for a refund of taxes from the Alabama Department of Revenue. Campbell alleged that it had mistakenly paid sales tax assessed against it, under the "withdrawal" provision of § 40-23-1 (a)(10), Code of Alabama 1975, on materials used by it in the rubberlining process. Campbell contended that, under § 40-1-34, Code of Alabama 1975, it was entitled to a refund of taxes mistakenly paid. The initial amount claimed was later reduced by stipulation to $39,287.59, of which most was attributable to the materials applied in rubberlining, and the balance to purchases of sand used to prepare the surfaces for rubberlining. *Page 1073 
The Department denied Campbell's petition. Campbell filed a petition for mandamus in the Montgomery County Circuit Court.
After an ore tenus hearing on the merits, the circuit court granted Campbell's petition for mandamus and ordered the Commissioner to refund to Campbell $39,287.59, plus interest. The court based its decision on its determination that Campbell was a "manufacturer" under the applicable statutory provisions. The court found that the questions of whether Campbell should be taxed on a "retail sale" under the § 40-23-1 (a)(10) withdrawal provision when it withdrew materials previously purchased at wholesale and whether Campbell should be taxed at retail or "machine" rates on its purchases of sand used for preparing objects to be rubberlined were both answered by deciding that Campbell was a "manufacturer."
On appeal, the Commissioner raises three issues. First, the Commissioner contends that Campbell cannot properly be considered a manufacturer when it rubberlines pipe and other vessels that were owned by others who merely paid Campbell for the addition of rubber lining. Second, the Commissioner urges that materials used by Campbell to rubberline pipe or vessels owned by others cannot be properly considered to enter into and become an ingredient or component part of a product manufactured by Campbell for sale. Third, the Commissioner argues that Campbell failed to introduce a scintilla of evidence supporting its contention that the sand used in preparation for rubberlining should be taxed at the machine rate, and that this portion of Campbell's petition for mandamus should therefore have been dismissed.
The rubberlining process is one by which pipes or vessels that are to come in contact with corrosive substances are lined with a protective layer of rubber. Because of its noncorrosive properties, a layer of rubber placed in or around an object subjected to corrosive substances will allow that object to achieve a much longer useful life. Particularly, common usages for rubber lining are in the lining of pipes, tanks and vats. The chemical and paper industries are heavy consumers of this type of treated product.
The rubber lining itself is custom cut from rolls of rubber to fit the particular object for which lining is desired. The interior or exterior (most rubberlining is interior) surface of the object is first sandblasted to clean it. After the application of a patented, multi-step cementing scheme, the rubber lining is placed inside of or against the surface of the object. In some instances, the nonlined surface of the object is primed and painted. In order to perform the rubberlining process, Campbell withdraws from inventory or uses materials that it has purchased at wholesale (no sales tax). In some instances Campbell fabricates or manufactures vessels or pipe which it then rubberlines and sells. Such instances of manufacture and sale of an entire product are not involved in this case.
The Commissioner contends that the inquiry for sales tax purposes is not simply limited to whether or not Campbell is a manufacturer. The Commissioner's position is that Campbell properly purchases at wholesale, and uses without sales tax consequences, materials used in rubber-lined products that Campbell fabricates for sale. The Commissioner concedes that those materials do enter into and become an ingredient or component part of a product manufactured by Campbell for sale, and that in those instances the purchase was properly characterized as a tax-free wholesale purchase.
The Commissioner argues, however, that under the wording of §40-23-1 (a)(10), when Campbell withdraws from inventory rubberlining materials purchased at wholesale and uses those materials to rubberline objects (new or used) that belong to others, and which are subsequently returned to the owner for his use or sale, the withdrawal does not fit within any of the exceptions to the provisions of § 40-23-1 (a)(10) and must be considered a "retail sale," upon which sales tax must be paid by the wholesale purchaser. The resolution of this issue is *Page 1074 
of great importance to Campbell because, as the parties have stipulated, fifty percent of Campbell's rubberlining operations are performed on new objects that do not belong to Campbell and ten percent are performed on used objects that do not belong to Campbell.
Section 40-23-1 (a)(10) reads, in pertinent part as follows:
"Definitions.
 "(a) ". . .
"(10) SALE AT RETAIL OR RETAIL SALE
 ". . . The term `sale at retail' or `retail sale' shall also mean and include the withdrawal, use or consumption of any tangible property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title, in connection with the business or by the person so withdrawing, using or consuming the same, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured, fabricated or compounded for sale or for use in the performance of a contract for improvements or additions to real estate situated outside the state of Alabama; and such wholesale purchaser shall report and pay the taxes thereon." (Emphasis added.)
Tracking the statutory provision, we find the following to be true in this case:
 (1) The rubber-lined materials are withdrawn from inventory and used or consumed by Campbell when it performs rubberlining;
 (2) The materials were previously purchased at wholesale;
 (3) When applied to an object not owned by Campbell, the materials were personally and privately used in performance of Campbell's business of providing a service.
The next inquiry under the pertinent sentence of § 40-23-1
(a)(10) is whether Campbell comes under any of the exceptions to the requirement that, if these facts exist, sales tax must be paid upon the withdrawal. The exceptions are:
 (1) When the materials have been previously withdrawn from inventory and have already had sales tax paid on them because of such withdrawal; or
 (2) When the materials enter into and become an ingredient or component part of a product manufactured either for sale or for performance of a contract for improvements or additions to real estate situated outside the state of Alabama.
§ 40-23-1 (a)(10), Code of Alabama 1975.
In this case, (1) does not apply. Only the first provision of (2) is here applicable. Therefore, in order for Campbell to escape retail sales tax upon withdrawal of materials purchased at wholesale, the materials must "enter into or become an ingredient or component part of a product manufactured by Campbell forsale."
Campbell contends that ownership of the object is immaterial because what it "manufactures" is the rubber lining. The Commissioner contends that there must be a manufacture of an end product for sale and that Campbell does not "sell" the rubber lining as an end product. In fact, Campbell concedes that it does not sell the rubber lining it produces as a separate product.
Campbell urges that the court adopt a broad definition of the word "manufacture" in this case. In its broadest sense, manufacture implies any change wrought by hand. State v. Acker,45 Ala. App. 574, 233 So.2d 514 (1970). However, in taxing statutes the word "manufacture" is generally given a more narrow meaning. State v. Acker, supra. In other words, to "manufacture" is to: "reduce materials into a form fit for use . . . by giving such materials *Page 1075 
new forms, qualities, properties, or combinations. . . ." Statev. Advertiser Company, 257 Ala. 423, 59 So.2d 576 (1952).
Other tests that can be applied to determine whether a product is "manufactured" are the "standard finished product" or "intrinsic value" tests used in State v. Air ConditioningEngineers, Inc., 277 Ala. 675, 174 So.2d 315 (1965). We find no problem related to the facts of this case in any of those definitions of "manufacture." We accept that Campbell manufactures the rubber lining. However, such acceptance does not prevent the conclusion that the withdrawal and consumption of the manufactured rubber lining in the performance of a personal contract (the lining of another's property) comes within the definition of a "retail sale" as provided by § 40-23-1 (a)(10). Unlike the situation in Ex parte Disco Aluminum Products Co.,455 So.2d 849 (Ala. 1984), the title to the materials consumed is not transferred or sold. What Campbell sells to its customers that give it objects to rubberline is not a "manufactured" rubber lining. It sells its capability to produce and apply the rubber lining.
The purpose of § 40-23-1 (a)(10) is to reach and tax transactions which do not fall within the usual definition of a retail sale. Otherwise there would be no taxable event. AlabamaPrecast Products, Inc. v. Boswell, 357 So.2d 981 (Ala.Civ.App. 1977), affd, 357 So.2d 985 (Ala. 1978). The situation at hand fits squarely within the criteria for a taxable withdrawal under § 40-23-1 (a)(10). Campbell does not fall under any of the exceptions enumerated. Therefore, the first two issues raised by the Commissioner must be resolved in the Commissioner's favor.
After examining the Commissioner's third contention of error, we find that the trial court also erred by ruling that Campbell should only be taxed at the one and one-half percent "machine" rate when it uses or purchases sand for the rubberlining process. Section 40-23-2 (3) of the Code provides that "machines" sold for use in manufacturing tangible personal property shall be taxed at a rate of one and one-half percent of the gross proceeds of their sale. Sand has been held to be a "machine" within this provision.State v. Newberry Manufacturing Co., 265 Ala. 600, 93 So.2d 400
(1957) (construing its statutory predecessor).
Again, the question is not simply whether Campbell is a manufacturer in any instance, but rather whether the sand used by Campbell is used to manufacture tangible personal property. In those cases where Campbell manufactures a rubberlined product for sale, we find that it is, and therefore should be taxed at the one and one-half percent rate. We have found that when Campbell rubberlines someone else's product, it falls within the definition of a retail sale. In those instances the sand must be taxed at the regular four percent rate upon its cost of purchase at wholesale.
The ruling of the trial court granting Campbell's petition for mandamus is hereby reversed, and this case is remanded with direction to deny the petition for writ of mandamus.
REVERSED AND REMANDED WITH DIRECTION.
BRADLEY and HOLMES, JJ., concur.