This is the second time this sales tax case has been before the appellate courts. See White v. Campbell Associates, Inc.,473 So.2d 1071 (Ala.Civ.App. 1985). We granted certiorari following this second appeal in order to review the "withdrawal for use" provisions of Ala. Code 1975, § 40-23-1(a)(10), especially in light of the Legislature's amendment of that Code section. Act No. 86-689, Acts of Alabama 1986.
 FACTS
The taxpayer, Campbell Associates, Inc. (hereinafter "Campbell"), is a multifaceted company with rental, construction, steel fabrication, and rubberlining divisions. *Page 972 
The dispute here involves the rubberlining division.
The rubberlining process is described in White v. Campbell Associates, supra, as follows:
 "The rubberlining process is one by which pipes or vessels that are to come in contact with corrosive substances are lined with a protective layer of rubber. Because of its noncorrosive properties, a layer of rubber placed in or around an object subjected to corrosive substances will allow that object to achieve a much longer useful life. Particularly, common usages for rubber lining are in the lining of pipes, tanks, and vats. The chemical and paper industries are heavy consumers of this type of treated product.
 "The rubber lining itself is custom cut from rolls of rubber to fit the particular object for which lining is desired. The interior or exterior (most rubberlining is interior) surface of the object is first sandblasted to clean it. After the application of a patented, multi-step cementing scheme, the rubber lining is placed inside of or against the surface of the object. In some instances, the nonlined surface of the object is primed and painted. In order to perform the rubberlining process, Campbell withdraws from inventory or uses materials that it has purchased at wholesale (no sales tax)."
473 So.2d at 1073.
For a complete understanding of the posture of this case, we set out some of its history.
In February 1981, Campbell was audited for the tax years 1978, 1979, and 1980 by the Alabama Department of Revenue, and the Department assessed Campbell for additional sales tax, which Campbell paid in June 1983. In July 1983, Campbell filed a petition for a refund of the sales tax paid, in the amount of $46,405.34, alleging that it had mistakenly paid sales tax under the "withdrawal for use" provision of § 40-23-1(a)(10), on materials utilized in the rubberlining process. The parties stipulate that the original amount of sales tax allegedly owed should be reduced to $39,287.59.
After the Department of Revenue denied Campbell's petition for refund, it filed a petition for mandamus in the Montgomery County Circuit Court, which in July 1984, granted Campbell's petition and ordered the Commissioner of Revenue to refund $39,287.59, plus interest, to Campbell. From this adverse judgment, the Department appealed to the Court of Civil Appeals, and that court, in White v. Campbell Associates, supra, held that Campbell was not entitled to a refund, and directed the circuit court to deny the petition for writ of mandamus. This Court denied Campbell's petition for writ of certiorari.
Shortly thereafter, the Court of Civil Appeals, in a case involving a different company, was again faced with the "withdrawal for use" provision of § 40-23-1(a)(10). SeeMorrison Food Service of Alabama v. State, 497 So.2d 131
(Ala.Civ.App. 1985). In Morrison, the Department of Revenue assessed sales and use taxes against Morrison in the amount of $165,464.90, the assessment being based on a withdrawal of food from its inventory to fulfill contractual obligations. Morrison operated food service programs for several nursing homes, hospitals, and fraternities, some of which were tax exempt.
Morrison agreed to provide food purchased at wholesale to the institutions and to provide supervisory personnel to operate the food service programs. The customers, on the other hand, agreed to provide the kitchen facilities, equipment, and non-supervisory personnel. The customers also agreed to reimburse Morrison for its out-of-pocket expenses and to pay a management fee. The Court of Civil Appeals held that Morrison's withdrawal of food from its inventory constituted a taxable withdrawal under § 40-23-1(a)(10). This Court reversed, holding that Morrison was not obligated to pay sales tax for the withdrawal of food from its inventory to fulfill its contractual obligations, because title to the food wastransferred to tax exempt entities. Ex parte Morrison FoodService of Alabama, 497 So.2d 136 (Ala. 1986). In September 1986, following this Court's ruling in Morrison, Campbell, pursuant to Rule 60(b), *Page 973 
Ala.R.Civ.P., filed a motion for relief from judgment with the Montgomery County Circuit Court. The circuit court granted Campbell's Rule 60(b)(6) motion and ordered the Commissioner of Revenue to refund the $39,287.59 assessment, plus interest. On appeal to the Alabama Court of Civil Appeals, the judgment of the trial court was again reversed. White v. Campbell Associates, Inc., 544 So.2d 969 (Ala.Civ.App. 1988). The Court of Civil Appeals based its reversal on the fact that §40-23-1(a)(10) had been amended in 1986,[1] prior to the trial court's hearing on the Rule 60(b)(6) motion.
Section 40-23-1(a)(10), before the 1986 amendment, read in pertinent part as follows:
 "SALE AT RETAIL OR RETAIL SALE. . . . The term 'sale at retail' or 'retail sale' shall also mean and include the withdrawal, use or consumption of any tangible property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title, in connection with the business or by the person so withdrawing, using or consuming the same, except
property which has been previously withdrawn from the business or stock and so used or consumed and
with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured, fabricated or compounded for sale or for use in the performance of a contract for improvements or additions to real estate situated outside the state of Alabama; and such wholesale purchaser shall report and pay the taxes thereon."
Section 40-23-1(a)(10), after the 1986 amendment, reads in pertinent part:
 "SALE AT RETAIL OR RETAIL SALE. . . . The term 'sale at retail' or 'retail sale' shall also mean and include the withdrawal, use or consumption of any tangible property by [anyone] who purchases same at wholesale, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such wholesale purchaser shall report and pay the taxes thereon."
The thrust of Campbell's argument is that it is entitled to a refund of sales tax paid because the tangible property was bought at wholesale and entered into and became a component part of a product manufactured for sale. We disagree.
It was stipulated at trial that Campbell, in certain situations, fabricates or manufactures vessels or pipes that it then rubberlines for sale. In such instances, the Department of Revenue considered Campbell to be a manufacturer, and the Department concedes that those products purchased by Campbell at wholesale that were used within rubberlined products manufactured for sale, pass without sales tax consequences.
The Department took the position, however, that when Campbell withdraws from inventory materials purchased at wholesale for any purpose other than including such property in products it manufactures for sale, such withdrawals are deemed to be taxable "retail sales." In White v. Campbell Associates,Inc., 473 So.2d at 1075, the Court of Civil Appeals held that when Campbell rubberlined pipes brought in by its customers Campbell was not engaged in manufacturing but was selling "its capacity to produce and apply the rubber lining." Id. (Emphasis in original.) *Page 974 
Because the Court of Civil Appeals based its decision in part upon the 1986 amendment, and because the Department of Revenue and taxpayers are frequently at odds, we believe it would be helpful to set out once again the historical background of the "withdrawal for use" provision, as summarized in Ex parteMorrison Food Service of Alabama, 497 So.2d 136 (Ala. 1986):
"The original sales tax law did not contain any withdrawal provisions. The concept first surfaced in 1945 in 38 Op. Att'y Gen. 37 (1945), when the Commissioner of Revenue requested an attorney general's opinion as to whether or not the commissioner had authority to issue the following regulation:
" 'SALES TAX REGULATION NO. 20
 " 'Where a licensed retail dealer in Alabama purchases tangible personal property for resale but diverts a portion thereof to his own personal use or consumption, without resale, such use or consumption may be determined, at the option of the State Department of Revenue, to be a sale of such property at the regular retail price thereof and such dealer may be required to report such diversion on forms furnished by the State Department of Revenue, as all other retail sales are reported, and to pay the taxes thereon in the same manner as if such property had been sold at retail. (Emphasis added.)'
"The Attorney General responded that the Commissioner of Revenue had no authority to promulgate such a regulation, stating:
 " 'In view of the definition of the term "sale" set out above, it is my opinion that the personal use or consumption by a licensed retail dealer of part of the tangible personal property purchased by him at wholesale, presumably for resale, is not a sale of such tangible personal property within the meaning of the sales tax statutes, and for this reason is not a part of the "gross proceeds of sales" of such licensed retail dealer and is not subject to sales tax.'
"38 Op. Att'y Gen. at 40-41. The Attorney General did, however, suggest legislation to correct the abuse. 38 Op. Att'y Gen. at 41.
"In 1947, the House voted to amend the sales tax law as follows:
 " 'Said term "gross proceeds of sale" shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business, and shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn from the business or stock and used or consumed by any person so withdrawing the same, except property which has been previously withdrawn from such business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same.
 " 'Said term "gross receipts" shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn or used from the business or stock and used or consumed in connection with said business, and shall also mean and include the reasonable and fair market value of any tangible personal property previously purchased at wholesale which is withdrawn from the business or stock and used or consumed by any person so withdrawing the same, except property which has been previously withdrawn from such business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property *Page 975 
or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same.
 " 'The term "sale at retail" or "retail sale" shall also mean and include the withdrawal, use or consumption of any tangible personal property by any one who purchases same at wholesale, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such wholesale purchaser shall report and pay the taxes thereon.'
"1947 House Journal, Reg. Sess., 940-42.
"These provisions were enacted. See Ala. Acts 1947, Act No. 305, § 1(1)(f), (h), and (j), at 160, 161-62.
"The withdrawal provisions were enacted solely to fill a void not theretofore covered by any existing provision of the Alabama Sales Tax Law, that is, to tax a person who purchased goods at wholesale for the purpose of reselling and who withdrew some of these goods for his own personal and private use or consumption, without transfer of title.
"In Ex parte Disco Aluminum Products Co., 455 So.2d 849 (Ala. 1984), this court discussed the subsequent history of the withdrawal provision, as follows:
 " 'The observation that the State at one time did not deem the withdrawal provision to apply to situations where the manufacturer or wholesale purchaser transferred title is reinforced by the fact that the State did not contend in Hamm v. Continental Gin Co., 276 Ala. 611, 165 So.2d 392
(1964), that the withdrawal provision applied. In that case, the State merely contended that the sales of gins installed in South Carolina were closed transactions within Alabama and thus were taxable retail sales.
 " 'In State v. T.R. Miller Mill Co., 272 Ala. 135, 130 So.2d 185 (1961), the Court held that the State properly assessed taxes under the withdrawal provision against a lumber mill for withdrawals of its lumber from inventory to use in repairs, improvements and maintenance of its own facilities. In State v. Kershaw Manufacturing Co., 273 Ala. 215, 137 So.2d 740 (1962), the court held that the leasing of machines manufactured by Kershaw constituted a taxable withdrawal, noting that Kershaw manufactured the machines for a profit, whether by sale or lease. In State v. Barnes, 45 Ala. App. 522, 233 So.2d 83 (1970), the Court of Civil Appeals held that the withdrawal of phonograph records from stock to place in jukeboxes constituted a withdrawal. But in Drennen Motor Co. v. State, 279 Ala. 383, 185 So.2d 405 (1966), the Court held that designation of cars as demonstrators did not constitute withdrawals, because the cars were available for sale at all times and sold for an average of four and one-half percent less than new cars not used as demonstrators.
 " 'In each of these cases the state sought to impose tax on a withdrawal where no transfer of title took place. Later cases, however, established a pattern of applying the withdrawal provision where manufacturers transferred their products. In Rabren v. United States Steel Corp., 286 Ala. 394, 240 So.2d 358 (1970), the Court cited [State v. Air Conditioning Engineers, Inc., 277 Ala. 675, 174 So.2d 315 (1965), and State v. Acker, 45 Ala. App. 574, 233 So.2d 514 (1970)], in affirming that the use of structural steel in bridge construction was a taxable withdrawal "measured by the purchase price paid by [U.S. Steel] for such steel." 286 Ala. at 397, 240 So.2d at 361. Rabren involved both the manufacturer/contractor and the withdrawal provisions, discussed standard steel and custom-fabricated steel, and taxed both manufactured and purchased steel; therefore, *Page 976 
it is less than crystal clear as precedent for applying the withdrawal provision to items transferred by the taxpayer to another.
 " 'The withdrawal provision was first applied to an objecting taxpayer who transferred the goods to another in Alabama Precast Products, Inc. v. Boswell, 357 So.2d 985 (Ala. 1978). Alabama Precast manufactured roof slabs both for sale at retail and for use in "furnish and install" contracts. The State sought to tax, under the withdrawal provision, the value of the raw materials used to manufacture roof slabs for a contract under which Alabama Precast was to furnish and install roof slabs on a building in South Carolina. The parties agreed that the withdrawal provision was the only statute applicable to the facts of the case, and thus the Court did not consider whether the manufacturer/contractor provision was more germane to the transactions. In one sense, of course, the latter provision did not apply, because it relates only to use of property with the state. In another sense, however, the manufacturer/contractor provision might have been deemed to apply, had Alabama Precast so argued, to the extent that Alabama Precast's operations were of the type governed by that provision.
 " 'The Court in Alabama Precast upheld the finding of the Court of Civil Appeals that the transactions were taxable, on the basis that "[t]he raw materials [were] withdrawn . . . [and] used by Alabama Precast Products in the performance of a personal obligation under the construction subcontract." Id., 357 So.2d at 988 (emphasis in original). Thus, the courts established not only the application of the withdrawal provision to goods transferred to others, but also the concept that the requirement that withdrawals must be for "personal and private use" included the "personal obligation" of a "furnish and install" contract. This result also obtained in Home Tile and Equipment Co. v. State, 362 So.2d 236
(Ala.Civ.App.), cert. denied, 362 So.2d 239 (Ala. 1978).
 " 'The legislature signaled its disapproval of these interpretations of the withdrawal provision by passing Act. No. 83-720, 1983 Ala. Acts 1167, effective during the pendency of this appeal. The Act amends several of the definitions in Code 1975, § 40-23-1, chiefly relating to the very issue at hand. The withdrawal provision of § 40-23-1(a)(10) is amended to read, with new material emphasized:
 ' " 'The term "sale at retail" or "retail sale" shall also mean and include the withdrawal, use or consumption of any tangible personal property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title, in connection with the business or by the person so withdrawing, using or consuming the same, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured, fabricated or compounded for sale or for use in the performance of a contract for improvements or additions to real estate situated outside the State of Alabama; and such wholesale purchaser shall report and pay the taxes thereon.' "
 " 'The Act also states that it "does not constitute a change in, but is declaratory of, the pre-existing law." Courts must consider subsequent acts passed by the legislature to clarify previously ambiguous provisions. McWhorter v. State Board of Registration for Professional Engineers and Land Surveyors ex rel. Baxley, 359 So.2d 769
(Ala. 1978).'
"Ex parte Disco Aluminum Products Co., Inc.,455 So.2d at 852-53.
 "Thus, we held that in light of the legislature's amendment of *Page 977 
§ 40-23-1(a)(10), Alabama Precast must be overruled insofar as it held that the withdrawal provision could be applied to situations in which title to the goods withdrawn is transferred to another, as is true here."
497 So.2d at 137-40.
When Morrison was released, the Legislature was meeting in special session. It deleted from the definitional section of §40-23-1(a)(10) the phrase "without transfer of title," apparently at the urging of the Department because of its belief that this Court had incorrectly interpreted the law inMorrison.
The Legislature apparently thought that Morrison had broad implications in situations where a person withdrew materials from supplies and used them to perform a contractual obligation and was thereby excused from paying sales tax. That is a misreading of Morrison. Morrison is applicable only to situations where material bought at wholesale is subsequently used to fulfill a contractual obligation to a tax exemptentity. Consequently, when one enters into and fulfills a performance contract with a non-tax exempt entity, title passes and there is a taxable retail sale. So that there would be no room for misapplication of our narrow interpretation of §40-23-1(a)(10), as it applies to tax exempt entities, we extended the Morrison decision to include our response to the Department of Revenue's application for rehearing:
 "On application for rehearing, the State suggests that the original opinion of this Court might be interpreted as holding that Morrison does not owe a tax on the sales price of the raw food sold by it to non-tax-exempt entities. The original opinion merely holds that Morrison is not taxable under . . . Code 1975, § 40-23-1(a)(10). . . .
 "In its brief in opposition to the application for rehearing, Morrison properly concedes that it is taxable on the sales price of the raw food sold to the non-tax-exempt entities because such sales of raw food would still be a sale at retail and taxable under Code 1975, § 40-23-2(1), even though the transaction was not taxable under the above quoted provision of Code 1975, § 40-23-1(a)(10). This is the appropriate interpretation of the original opinion of this Court."
497 So.2d at 142.
With respect to the Rule 60(b)(6) motion, we recognize that great deference must be accorded the trial judge in his or her decision to grant or deny that motion. This Court, however, also recognizes that such deference is not without guidelines.
 "Rule 60(b)(6) is an extraordinary remedy, permitted only in exceptional circumstances when the party can show the court sufficient equitable grounds for relief. [Citation omitted.] We will not disturb the decision of the trial court on a 60(b) motion, however, unless we find one of the following: An absence of reasonable cause; that the rights of others subsequently arising would be adversely affected; or that the trial court's decision is unjust."
Reese v. Robinson, 523 So.2d 398, 400 (Ala. 1988).
The basis for the trial court's grant of Campbell's Rule 60(b)(6) motion in this case is the trial court's misreading of the Morrison decision. Because there is nothing in the record or briefs to suggest that Campbell transferred products acquired at wholesale to tax exempt entities, the reasoning found in Ex parte Morrison has no application to the facts presented in this case.
Having so concluded, we pretermit any discussion concerning additional issues raised by Campbell in support of its petition for writ of certiorari.
The Court of Civil Appeals' judgment reversing the trial court's order granting Campbell's Rule 60(b)(6) motion is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES, ADAMS and HOUSTON, JJ., concur.
STEAGALL, J., concurs in the result.
[1] After this Court's ruling in Ex parte Morrison Food Service, the Legislature amended the "withdrawal for use" provision by the enactment of Act No. 86-689, Acts of Alabama 1986. *Page 978