MADDOX, Justice.
This case presents a dispute between two Alabama municipalities over which one is the taxing authority under the “withdrawal for use” provisions of State and municipal taxing statutes. The issue is one of first impression, and raises the question of which of the two municipalities, Huntsville or Madison, can levy taxes with respect to certain “self-consuming” transactions, under the “withdrawal for use” provisions contained in both § 40 — 23—l(a)(10), Ala.Code 1975, and City of Huntsville Ordinance No. 65-360, Art. II, Div. 2, § l(j).
The specific question is whether Huntsville can impose a sales tax on Intergraph, Inc., for items withdrawn from inventory located in the City of Huntsville, that were previously purchased at wholesale in the City of Huntsville, and not used in the City of Huntsville, but later used or consumed in the City of Madison. Stated differently: When did the “retail sale” occur? Did it occur at the time of the withdrawal of the items, in Huntsville, or at the time of their use and consumption, in Madison?
The trial court held that the “retail sale” did not occur until the items were used and consumed in the City of Madison. We conclude that the learned trial judge has misconstrued legislative intent in deciding that a “retail sale” does not occur until the items are actually used or consumed by the purchaser; therefore, we reverse and remand.

Facts

Intergraph, Inc., is a manufacturing corporation with its principal place of business in Madison County, Alabama. Intergraph maintains warehouses for inventory storage within the taxing jurisdiction of the City of Huntsville. As a manufacturer of products for resale, Intergraph makes tax-free purchases of tangible personal property at wholesale, pursuant to § 40 — 23—1(a)(9), Ala. Code 1975. Intergraph periodically withdraws portions of this inventory from its Huntsville warehouses for its own use or for consumption in Madison. The inventory items that are withdrawn from Intergraph’s Huntsville warehouses are not made available for sale to the public, but are used in Intergraph’s manufacturing, testing, and development processes. Intergraph, along with every such seller that withdraws items of inventory for its own use or consumption, is liable for the collection of tax thereon, unless exempted by statute. See § 40-23-67, Ala. Code 1975.
The City of Madison levies a two and one-half (2½) percent sales tax on taxable transactions within its jurisdiction, and Madison County levies an additional one (1) percent sales tax to fund the Madison County Board of Education (“Board”). Huntsville imposes a three and one-half (3½) percent tax on taxable transactions within its city limits. *586 Intergraph has customarily paid sales tax to the City of Madison and to the Board on transactions involving a withdrawal of inventory from its Huntsville facilities that are later used or consumed by it in Madison.
This dispute arose in July 1992, when Huntsville informed Intergraph that, based upon its interpretation of the applicable statutes and regulations, Intergraph was required to pay sales tax to Huntsville on the items withdrawn from inventory in Huntsville, even though they were not used and consumed in Huntsville. Intergraph, desiring to avoid double liability for these taxes, inquired of Madison as to which of the two municipalities was the proper taxing authority. Shortly thereafter, Huntsville audited Intergraph’s taxable transactions and subsequently requested payment from Intergraph of sales tax in the amount of $1,008,038.39 for the period June 1989 through June 1991. Because Intergraph had already paid taxes on the transactions to the City of Madison, Intergraph asked Madison for a refund of the taxes that Huntsville claimed were due and payable to it. Later, Intergraph filed a complaint in interpleader and paid into the court all sales taxes owed for June, July, and August 1992, relating to inventory withdrawn for its own use from warehouses located in Huntsville and used or consumed by Inter-graph in Madison. The Board was permitted by the court to intervene in this action and filed a cross-claim against Huntsville seeking declaratory relief. The trial court entered a summary judgment in favor of Madison and the Board, and Huntsville appealed. The State of Alabama Department of Revenue submitted an amicus curiae brief in support of Huntsville, and the Business Council of Alabama filed an amicus curiae brief in support of Madison and the Board.

Discussion

The issue on appeal is whether the “withdrawal for use” provision contained in § 40-23 — l(a)(10), Ala.Code 1975, and in Huntsville Ordinance No. 65-360, Art. II, Div. 2, § l(j), imposes a sales tax on inventory previously purchased at wholesale in the taxing jurisdiction of the municipality where the inventory is withdrawn for self-consumption, even though the inventory is not used in the taxing authority where the inventory is "withdrawn, but is, in fact, later used or consumed in another municipality.
Huntsville and the State Department of Revenue, as amicus, make detailed arguments that the “withdrawal” provisions of the sales tax act, as construed by this Court on more than one occasion, demonstrate that the subject withdrawals for Intergraph’s own use of items in the inventory are taxable as “retail sales” by the City of Huntsville. The City of Madison and the Board, along with amicus Business Council of Alabama, argue to the contrary.
Huntsville contends that the sales taxes are incurred by Intergraph in Huntsville, which is the jurisdiction where inventory previously purchased at wholesale is withdrawn for use or consumption by Intergraph. Huntsville says that the sales tax on inventory withdrawn for use or consumption is due in the jurisdiction where the inventory is withdrawn for use or consumption, regardless of where the inventory is ultimately used or consumed. In support of this argument, Huntsville says that if this Court adopts the construction placed on the “withdrawal for use” provisions by the trial judge, then a taxpayer could avoid the payment of sales taxes on items withdrawn for use or consumption in this State that were previously purchased at wholesale in those instances when the use or consumption thereof occurred beyond the State’s borders.
Madison and the Board, on the other hand, argue that the wording of the statute, and this Court’s interpretation of it, consistently require a two-part analysis, that is, a withdrawal and a use before the taxable event occurs. Madison argues that because the withdrawal and use were completed in Madison’s taxing jurisdiction, the tax is due in Madison. Madison and the Board say that if the Court should adopt the position advanced by Huntsville, a taxable sale would occur the moment items crossed the threshold of a warehouse whenever the withdrawing party has the intent at that moment to internally use or consume the items. Madison contends that such a holding would be unduly burdensome to apply and to enforce.
*587 The power of both Huntsville and Madison to impose a sales tax on transactions such as the ones involved here is not questioned. Under the authority of Act No. 298, Ala. Acts 1965, which enabled cities and towns to enact sales tax ordinances, Huntsville enacted Ordinance No. 65-360, which imposes a sales tax on all retail sales occurring within Huntsville’s taxing jurisdiction. Ordinance No. 65-860, Art. II, Div. 2, § l(j), is identical in all material respects to § 40 — 23—l(a)(10), Ala. Code 1975. Ordinance No. 65-360 defines a “retail sale” as follows:
“The term ‘sale at retail’ or ‘retail sale’ shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same....”
Huntsville Ordinance No. 65-360, Art. II, Div. 2, § l(j).
The Huntsville ordinance uses language parallel to the following language found in § 40 — 23—1(a)(10), Ala.Code 1975:
“(10) ... The term ‘sale at retail’ or ‘retail sale’ shall also mean and include the withdrawal, use or consumption of any tangible personal property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title, in connection with the business or by the person so withdrawing, using or consuming the same, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured, fabricated or compounded for sale or for use in the performance of a contract for improvements or additions to real estate situated outside the State of Alabama; and such wholesale purchaser shall report and pay the taxes thereon.”
This Court has considered the withdrawal for use or consumption to be the event that triggers taxation, regardless of where the use or consumption occurs. Alabama Precast Products, Inc. v. Boswell, 357 So.2d 985 (Ala.1978), overruled on other grounds, Ex parte Morrison Food Service of Alabama, Inc., 497 So.2d 136 (Ala.1986), is cited by all the parties to this case and by the amici. In that case, Alabama Precast, an Alabama corporation, contracted to furnish precast roof slabs for installation in South Carolina. Alabama Precast paid sales tax in Alabama on the cost of making the slabs, in the amount of $5,541.38; later, South Carolina demanded sales tax on the materials used by Alabama Precast in the performance of its contract in South Carolina. Alabama Precast paid the taxes in South Carolina and then requested a refund from Alabama on the ground that it should not have to pay sales taxes on the slabs in both states. The State of Alabama agreed to refund $4,003.37 of the $5,541.38 paid because it found that the sales tax was due only on the cost of the raw materials used in the manufacture of the slabs. Alabama Precast, contending that it was due a refund of the entire amount paid to Alabama, petitioned for a writ of mandamus in the Jefferson County Circuit Court to require the State to give it a refund. The trial court denied the petition and Alabama Precast appealed. The Court of Civil Appeals affirmed, holding that there had been no “sale” for purposes of the sales tax statues, but, instead, that there had been a withdrawal and consumption of raw materials from Alabama Precast’s Alabama stock in furtherance of a contractual obligation, and that Alabama sales tax was payable on the raw materials that had been purchased by Alabama Precast at wholesale and had been withdrawn from its inventory in Alabama.
*588 On certiorari review, Alabama Precast argued that it was entitled to a full refund of the taxes paid in Alabama because, it argued, the taxable event occurred in South Carolina.[1] This Court construed Tit. 51, § 786(2)(j), Ala.Code 1940, the predecessor to § 40-23-l(a)(10), Ala.Code 1975. In affirming the judgment of the Court of Civil Appeals, this Court, in an opinion by Chief Justice Torbert, noted:
“[The purpose of the statute is] to reach transactions which could not be taxed because there was a withdrawal, use or consumption by the purchaser at wholesale, but no sale by him to another.... The withdrawal of the building materials was a retail sale under § 786(2)(j). This event occurred in Birmingham, Alabama, and thus constituted a closed, taxable transaction within this state.”
357 So.2d at 987-88.
The transactions in Alabama Precast Products were held to be taxable sales on the basis that the raw materials were withdrawn and used by Alabama Precast in the performance of a personal obligation under the construction subcontract. Thus, this Court, in Alabama Precast Products established not only what constituted a “withdrawal,” but also that the withdrawal must be for “personal and private use,” which included the “personal obligation” of a “furnish and install” contract.
Another case construing § 40-23-1 is Ex parte Sizemore, 605 So.2d 1221 (Ala.1992). In that case, the publisher of the Dothan Progress withdrew from stock ink and newsprint that had been purchased at wholesale and used it to print newspapers. The question presented was whether ink and newsprint purchased at wholesale and withdrawn from inventory or stock for use in producing or printing newspapers that were distributed free were subject to sales tax pursuant to the “withdrawal for use” provisions of § 40-23-1(a)(6) and (10). This Court stated that “the transfer of title is no longer a pivotal factor upon which we base our decision as to whether the withdrawal provisions apply.” 605 So.2d at 1227. The Court discussed the history of the withdrawal provisions of State law and the cases construing those provisions in various factual settings; it held that the withdrawal of ink and newsprint in a self-consuming transaction was subject to the tax, despite the fact that the newspapers were given away.
Another case with similar facts is Home Tile & Equipment Co. v. State, 362 So.2d 236 (Ala.Civ.App.1978), cert. denied, 362 So.2d 239 (Ala.1978). In that case, Home Tile and Equipment Company, an Alabama corporation, installed carpets in homes built in Mississippi, on a contract basis, and withdrew from its inventory carpets that had previously been purchased at wholesale. The question was whether Home Tile was liable for sales tax on the material withdrawn from inventory when the carpet was installed in Mississippi. Home Tile contended that the transaction amounted only to a sale consummated in Mississippi and that the withdrawal provision of the Alabama sales tax statute, § 40-23-l(a)(10), was inapplicable. This Court found “substantial evidence to show that there was no sale of flooring materials to the Mississippi builder.” The Court held:
“These materials were withdrawn from the inventory of the taxpayer to be used by the taxpayer pursuant in its obligation to furnish and install carpeting for the Mississippi builder. Thus, the withdrawal of the materials from inventory qualified as a taxable ‘retail sale’ under § 40-23-l(a)(10).... This withdrawal occurred in Mobile, Alabama, and thus constituted a closed, taxable transaction within this state. The fact that the flooring materials were transported and used out of the state did not transform this retail sale into a sale in interstate commerce.”
362 So.2d at 238-39.
Both this Court and the Court of Civil Appeals have construed § 40-23-l(a)(10) on *589 several occasions. In State v. Kershaw Manufacturing Co., 273 Ala. 215, 217, 137 So.2d 740, 741 (1962), this Court noted that “it is clear that [the predecessor to § 40-23-l(a)(10), Ala.Code 1975,] was enacted to reach transactions which could not be taxed because there was a withdrawal and use or consumption by the purchaser at wholesale but no sale by him to another.” Later, in State v. Kershaw Manufacturing Co., 372 So.2d 1325 (Ala.Civ.App.1979), the taxpayer Kershaw was a corporation that manufactured railroad maintenance equipment; to stay competitive in the market, the taxpayer built prototype equipment that included improvements over existing models. If a prototype proved effective in tests, the model would be manufactured and sold. On one occasion, Kershaw manufactured two such prototypes from stock and materials taken from inventory and the State assessed sales and use taxes under § 40-23-l(a)(10) and § 40-23-60(5). The trial court set aside the State’s assessment and the State appealed. The Court of Civil Appeals said:
“The ‘self-consuming’ features of the statutes were enacted to reach transactions which could not otherwise be taxed because, although there is a withdrawal from inventory by the purchaser at wholesale, there is no subsequent sale by him to another. In order for tax liability to obtain in a particular ‘self-consuming transaction,’ there must, of necessity, be a personal and private use or consumption by the manufacturer.”
372 So.2d at 1327 (citations omitted). In its order, the trial court had stated: 372 So.2d at 1328. The Court of Civil Appeals affirmed, holding that the use of parts and materials in manufacturing railroad maintenance equipment prototype machines that were sold or held for sale did not constitute personal and private use or consumption by Kershaw. Therefore, the use of materials purchased at wholesale in its manufacturing was not a taxable event within the meaning of § 40-2-l(a)(10) or § 40-23-60(5).
“Kershaw’s prototype program is not the equivalent of a withdrawal of parts and materials from inventory to perform research and development. Kershaw does not put materials and parts withdrawn from inventory for prototype machines to personal and private use or consumption. Rather, Kershaw withdraws parts and materials use in its prototype program to manufacture machines for sale.”
In contrast, a study of the record in this case reveals that Intergraph, in the ordinary course of its business, creates, tests, and studies certain alternative designs, methods, and variations of existing computer systems, in order to improve existing products, develop new products, and better respond to customer inquiries. Intergraph withdraws certain raw materials from its inventory in Huntsville and uses the materials to develop or manufacture products. The products manufactured or developed using the withdrawn materials are not available for sale to the public. Nor are the items withdrawn available for sale to the public, because they are used in the manufacturing, testing, and developmental process.
In Ex parte Morrison Food Service of Alabama, Inc., 497 So.2d 136 (Ala.1986), this Court, construing § 40-23-l(a)(10), held that the withdrawal for use provisions did not apply to food withdrawn from Morrison’s inventory and used by Morrison to perform food service contracts with tax-exempt entities. In Morrison Food Service, the taxpayer was assessed a sales tax of $165,464.90 by the Department of Revenue based on Morrison’s withdrawal of food from its inventory to fulfill its obligations under nine contracts with hospitals, nursing homes, and college fraternities. Morrison appealed the assessment, and the trial court entered a summary judgment for the State. The Court of Civil Appeals affirmed, and this Court granted certiorari review to decide whether Morrison’s withdrawal of food from its inventory to satisfy its service contracts to five tax-exempt entities was subject to a tax under the withdrawal provision.[2] The Court noted the *590 history of the sales tax on withdrawals of inventory and ultimately reversed, holding that the transaction was not subject to the tax, pursuant to § 40 — 23—l(a)(10), because title to the food was transferred to the institutions or to their customers. Based upon the legislative intent in drafting and amending § 40 — 23—l(a)(10), this Court stated:
“Section 40-23-l(a)(10) expressly limits its application to situations where a taxpayer withdraws, uses, or consumes ‘any tangible personal property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title.’ Thus, when the taxpayer transfers title to the goods which have been withdrawn, he cannot be taxed under the withdrawal provision.”
497 So.2d at 141. (Emphasis added in Morrison Food Service.)
The narrowness of the holding in Morrison Food Service was clarified in Ex parte Campbell & Associates, Inc., 544 So.2d 971, 977 (Ala.1989), where this Court stated that “Morrison Food Service is applicable only to situations where material bought at wholesale is subsequently used to fulfill a contractual obligation to a tax exempt entity.”
In White v. Campbell & Associates, Inc., 473 So.2d 1071 (Ala.Civ.App.1985), overruled on other grounds, Campbell sought a refund of taxes it alleged it had mistakenly paid under the “withdrawal” provision of § 40-23-l(a)(10), Ala.Code 1975. The trial court ordered the State to refund the money to Campbell, and the State appealed. The Court of Civil Appeals reversed, holding that Campbell’s situation did not fall within either of the two exceptions to § 43-20-l(a)(10), but, rather, that “the situation at hand fits squarely within the criteria for a taxable withdrawal under § 40-23-l(a)(10), Ala.Code 1975.” This Court, in Ex parte Campbell & Associates, Inc., 544 So.2d 971 (Ala.1989), affirmed, holding that the corporation was not entitled to a refund of the sales tax it had paid, absent a suggestion that products acquired at wholesale were transferred to tax exempt entities.
In Alabama Precast Products, Inc. v. Boswell, supra, the Alabama corporation had contracted to furnish precast roof slabs for installation in South Carolina. The transactions were held to be taxable on the basis that the raw materials were withdrawn and used by Alabama Precast in the performance of a personal obligation under the construction subcontract. Thus, this Court established not only the application of the withdrawal provision to goods transferred to others, but also the concept that the requirement that withdrawals must be for “personal and private use” included the “personal obligation” of a “furnish and install” contract.
In Ex parte Disco Aluminum Products Co., 455 So.2d 849 (Ala.1984), Disco manufactured products for installation outside of Alabama using component parts that had been purchased at wholesale. The State assessed sales tax in the amount of $32,621.14 against Disco; the trial court affirmed the assessment. Disco appealed, and the Court of Civil Appeals affirmed. This' Court reversed, holding that because Disco maintained no inventory of finished products and did not sell to the general public, but, instead, purchased component materials for use in manufacturing products for parties with whom it had contracted, the transactions were exempt from the sales tax.
Applying the rules of Alabama Precast Products, Inc., Ex parte Home Tile & Equipment Co., and Ex parte Sizemore to the present facts, we conclude that the withdrawal by Intergraph of tangible personal property from its inventory located within the taxing jurisdiction of Huntsville is a closed, taxable event within the City of Huntsville. Sales tax becomes due at the time and place of the withdrawal from inventory of tangible personal property. If the same items had been sold to a consumer other than Intergraph, and used by that consumer in Madison, the taxable event would have occurred in the City of Huntsville, because the “retail sale” would have occurred there. Under the provisions of the statute, a “retail sale” occurred when the items were withdrawn for use or consumption by the taxpayer; the withdrawal oc *591 curred in the taxing jurisdiction of the City of Huntsville.
Based on the foregoing, we hold that the sales tax to be collected on the cost of the inventory withdrawn by Intergraph for self-consumption is due and payable where the inventory is withdrawn, which in this ease is in the City of Huntsville. Accordingly, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and HOUSTON, STEAGALL and COOK, JJ., concur.
ALMON and SHORES, JJ., concur in the result.

. Precast's argument is set out in this Court's opinion:
"Alabama Precast Products contends that its subcontract with Daniel Construction Company, requiring Alabama Precast Products to 'furnish and install' roof slabs is, in effect, two contracts in one — a contract to sell the roof slabs to the construction company and a contract to supply services for installation of the roof slabs on the building.”
357 So.2d at 987.

. For a discussion of the holding in Morrison Food Service and the arguments that were made in the briefs in that case, see, Ex parte Sizemore, 605 So.2d 1221, 1227-30 (Ala.1992) (Maddox, J„ concurring, in part; dissenting, in part).